**HANDGARDS, INC., a corporation, Plaintiff,**

v.

**JOHNSON & JOHNSON, a corporation, and Ethicon, Inc., a corporation, Defendants.**

**No. 49451 WHO.**

United States District Court, N. D. California.

Jan. 7, 1976.

Maxwell M. Blecher, Blecher, Collins & Hoecker, Joel R. Bennett, Nancy Bennett, Kendrick, Netter, Orr & Bennett, Los Angeles, Cal., for plaintiff.

David F. Dobbins, Rogers & Wells, George S. Frazza, New York City, Robert M. Dunne, Dunne, Phelps & Mills, San Francisco, Cal., for defendants.

## OPINION

ORRICK, District Judge.

In this antitrust action, plaintiff contends that defendants instituted a series of patent infringement suits against it in bad faith as part of a conspiracy to restrain trade and monopolize the disposable plastic glove industry. The gravamen of plaintiff's complaint is that defendants accumulated a number of patents in the disposable plastic glove field, in particular the Gerard and Orisini patents, knowing that these patents were invalid or of doubtful validity, and then proceeded to bring infringement actions against plaintiff with the knowledge that the patents sued upon were invalid. Plaintiff alleges that the patent infringement actions were brought for the purpose of eliminating competition and as part of an overall scheme to monopolize the market.

In September, 1975, plaintiff learned that defendants intended to call as witnesses in their behalf three lawyers who were primarily responsible for prosecuting the prior patent infringement suits, including Charles Laff and Sidney Neumann. The summaries of the expected testimony of these witnesses revealed that they would testify as to legal advice they rendered to the defendants in connection with the prosecution of the prior actions.

Plaintiff asserted that the testimony of these lawyers would constitute a waiver by defendants of any attorney-client privilege applying to documents bearing on the purpose of the lawsuits and on defendants' good faith in maintaining them, as well as defendants' good faith belief as to the validity of the patents in question. Plaintiff sought production of such documents.

At a pretrial conference held on October 6, 1975, I ruled that if Messrs. Laff and Neumann were going to be witnesses at the trial, as indicated by the defendants, then the attorney-client privilege was waived.

Plaintiff thereupon noticed the depositions of Messrs. Laff and Neumann and, in connection therewith, subpoenaed documents relating to the basis of their opinions as to the merits of the patent litigation and the validity of the patents at issue. The subpoena requested the production of a wide range of materials, including all relevant records, opinion letters, interviews of witnesses, internal files, memoranda, and notes. Plaintiff contended that production of this underlying documentation was essential to proper cross-examination or possible impeachment of the opinions expressed by these attorneys at trial.

Defendants resisted such discovery, asserting that any waiver of the attorney-client privilege extended only to the advice rendered by these counsel, not to their entire litigation files.

On December 5, 1975, I granted plaintiff's motion to compel production of the underlying work product of Messrs. Laff and Neumann.

Defendants now request that I reconsider my previous ruling directing production of the working files of their prior counsel. In the alternative, defendants seek leave to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Having granted the motion to reconsider and having reconsidered, I now reaffirm my order of December 5, 1975, directing production of the sought-after files for the reasons hereinafter stated. However, I modify the prior ruling to the extent of now requiring the litigation files of these attorneys to be submitted to the Court for an *in camera* inspection in order to determine whether the documents contained therein are within the purview of plaintiff's motion. Furthermore, I deny defendants' request for leave to take an interlocutory appeal.

## The Attorney-Client Privilege

The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. See McCormick, *Evidence* § 87 (2d ed. 1972); 8 Wigmore, *Evidence* § 2292 (McNaughton rev. 1961).[1]

■ The deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice. *Garfinkle v. Arcata National Corp.*, 64 F.R.D. 688 (S.D.N.Y.1974); *Smith v. Bentley*, 9 F.R.D. 489 (S.D.N.Y.1949); see also, 8 Wigmore, *Evidence* § 2327 (McNaughton rev. 1961).

■ An important consideration in assessing the issue of waiver is fairness. *Bierman v. Marcus*, 122 F.Supp. 250 (D.N.J. 1954). Thus, a party may not insist on the protection of the attorney-client privilege for damaging communications while disclosing other selected communications because they are self-serving. Voluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communication about the same subject. *International Telephone and Telegraph Corp. v. United Telephone Company of Florida*, 60 F.R.D. 177, 185–186 (M.D.Fla.1973).

■ By putting their lawyers on the witness stand in order to demonstrate that the prior lawsuits were pursued on the basis of competent legal advice and were, therefore, brought in good faith, defendants will waive the attorney-client privilege as to communications relating to the issue of the good-faith prosecution of the patent ac-

tions. *Garfinkle v. Arcata National Corp., supra*; 8 Wigmore, Evidence § 2327 (McNaughton rev. 1961).

■ Since the same rules of privilege govern the scope of discovery as generally govern the admissibility of evidence at trial, a party may obtain pretrial discovery of materials allegedly subject to the attorney-client privilege where the materials fall within some exception to the privilege or where the protection of the privilege will be waived at the trial. See *International Telephone and Telegraph Corp. v. United Telephone Company of Florida, supra*, at 180; 4 J. Moore, *Federal Practice* ¶ 26.60[1] (2d ed. 1975). Indeed, defendants here concede that their decision to call Messrs. Laff and Neumann at trial gives plaintiff the right to discover oral communications and written opinions rendered to them by such counsel.

## The Work Product Doctrine

■ However, as defendants point out, the production of the underlying work product of the counsel who prosecuted the prior suits is another matter. The work product doctrine is an independent source of immunity from discovery, separate and distinct from the attorney-client privilege. *Vilastor-Kent Theater Corp. v. Brandt*, 19 F.R.D. 522, 524 (S.D.N.Y.1956). Therefore, defendants' waiver of the attorney-client privilege does not necessarily mean that the protection afforded by the work product doctrine is also breached.

■ The policies and purposes of the work product doctrine differ from those underlying the attorney-client privilege. The purpose of the attorney-client privilege is to encourage the complete disclosure of information between an attorney and his

---

1. The basic elements which are necessary in order to establish a claim of the attorney-client privilege were delineated by Judge Wyzanski in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass.1950), as follows:

 " * * * (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3)

the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." Id. at 358–359.

client. The privilege belongs to the client, and it is intended to secure a cloak of privacy for confidential communications made in the course of seeking or rendering legal advice. See *Burlington Industries v. Exxon Corp.,* 65 F.R.D. 26, 32 (D.Md.1974); 8 Wigmore, *Evidence* § 2291 (McNaughton rev. 1961); McCormick, *Evidence* § 87 (2d ed. 1972).

■ The work product doctrine, on the other hand, is aimed at protecting the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery. *Kirkland v. Morton Salt Co.,* 46 F.R.D. 28 (N.D.Ga.1968); Note, *Developments in the Law-Discovery,* 74 Harv.L.Rev. 940, 1045 (1961). The doctrine assures an attorney that his private files shall remain free from intrusions of opposing counsel in the absence of special circumstances. *Burlington Industries v. Exxon Corp., supra,* at 33; see also Advisory Committee Note to the 1970 Amendments of Rule 26(b)(3), 48 F.R.D. 497, 499–503 (1970); F. Freund, *Work Product,* 45 F.R.D. 493 (1968).

The outlines and rationale of the work product doctrine were first enunciated in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). There, Mr. Justice Murphy observed:

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.'" Id. at 510, 511, 67 S.Ct. at 393, 91 L.Ed. at 462.

Mr. Justice Murphy went on to express his concern that:

"Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." Id. at 511, 67 S.Ct. at 393, 91 L.Ed. at 462.

The law governing the discovery of an attorney's work product has been substantially codified in the 1970 amendments to Rule 26 of the Federal Rules of Civil Procedure. Rule 26(b)(3) now provides in pertinent part:

" * * * a party may obtain discovery of documents and tangible things * * * prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney * * *) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

In this case, defendants assert that the litigation files of their prior counsel should be protected from discovery for two principal reasons. First, defendants contend that

plaintiff has failed to demonstrate the substantial need and undue hardship required under Rule 26 for the production of the "non-mental impression" portions of their counsels' work product. Secondly, defendants construe Rule 26 to grant an absolute immunity from discovery for those portions of an attorney's work product containing mental impressions, conclusions, opinions, and legal theories (hereinafter referred to as "opinion work product").

■■■ I disagree. I find that in the particular circumstances of this case, plaintiff has made a sufficient showing of substantial need and undue hardship to overcome the qualified immunity from discovery for non-mental impression work product. I further find that Rule 26(b)(3) of the Federal Rules of Civil Procedure does not create an absolute immunity from discovery for opinion work product, barring disclosure of such material under any circumstances.

The principal issue in the case at bar is the good faith of the defendants in instituting and maintaining the prior patent litigation against plaintiff. Plaintiff's success in the instant action depends upon a showing that defendants pursued the prior suits knowing they would be unsuccessful on the merits. Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses to express their opinions as to the merits of the prior suits and the validity of the underlying patents, plaintiff has a particularized and compelling need for the production of the relevant work product of these attorneys. Without discovery of the work product, plaintiff will be unable to ascertain the basis and facts upon which the opinions of these witnesses are based. This will undoubtedly impair plaintiff's ability for effective cross-examination on a crucial issue.

I find that Judge Lord's decision in *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D.Pa. 1973) is controlling. *Bird* was a suit by an insurer to rescind an insurance policy allegedly acquired on the basis of false statements and material omissions made in the defendant's application for insurance. The defendant raised the defense of laches, contending that plaintiff should be barred from bringing suit because it knew or should have known of the grounds for rescission long before it instituted the action. The defendant sought discovery of the work product of plaintiff's counsel bearing on the issue of when plaintiff knew or should have known of the grounds for rescission.

On review of a special master's recommendations as to discovery, Judge Lord found that the defendant had made a sufficient showing of substantial need to justify disclosure of the sought-after work product. He reasoned that since the relevant inquiry was into what plaintiff knew or should have known concerning possible grounds for rescission, only through discovery of information in the hands of plaintiff and its agents could the defendant substantiate his defense.

Similarly, the plaintiff in the case at bar can demonstrate the bad faith of the defendants only through the discovery of information in the hands of the defendants and their attorneys.

In *Bird*, Judge Lord also discussed the degree of protection afforded an attorney's opinion work product under the circumstances. He stated:

"Because the nature of this defense concerns knowledge, legal theories and conclusions of plaintiffs' attorneys * *, such 'advice of counsel' evidenced in these documents is discoverable when it is directly relevant to a possible rescission action or suggests reasons to indicate the propriety of such an action. Rule 26(b)(3) on its face protects against the discovery of these aspects of the work product. However, exceptions have been made where such information is directly at issue, and the need for its production is compelling, as here. * * * Therefore, to the extent that legal opinions and observations made by counsel for plaintiffs suggest reasons to bring or not bring a suit for rescission of the insurance contract, they are to be produced. Id. at 47.

Discovery of an attorney's opinion work product was also ordered in *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 296

F.Supp. 979 (E.D.Wis.1969). This was a patent infringement suit in which the defendant asserted that the plaintiff had obtained the patent through improper means and sought the discovery of opinion work product relevant to this charge.

The court reasoned that the work product rule is essentially a balance between the need for discovery and the right of an attorney to retain the benefits of his own research. The court held that the protection afforded the fruits of a lawyer's labor must give way upon an exceptional showing of the need for discovery.

The court found such an exceptional need on the facts before it in a situation not totally unlike the case at bar. In *Kearney,* the defendants challenged the motives and the procedures employed by plaintiff in obtaining the patents in suit. The alleged improprieties involved the activities of the very lawyer whose work product was sought. While there is no allegation here that defendants' prior counsel have engaged in improper conduct of any kind, plaintiff does assert that these counsel had sufficient information to put them on notice of the invalidity of the patents sued upon. In such circumstances, there is an exceptional need for discovery justifying disclosure of opinion work product.

These cases refute defendants' assertion that Rule 26(b)(3) confers an absolute immunity from discovery on opinion work product. I am further persuaded that defendants' view is erroneous by the comments of Professor Moore, who states that:

> " * * * when the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are 'work product.'" 4 J. Moore, *Federal Practice* ¶ 26.64[4], at 26–447 (2d ed. 1975).

Although Professor Moore observes that the language of Rule 26(b)(3) directs that a court *shall* protect opinion work product from disclosure, he suggests that such protection should not screen information directly at issue in the case. 4 J. Moore, *Federal Practice* ¶ 26.64[4], at 26–447 (2d ed. 1975); but see, 8 Wright & Miller, Federal Practice and Procedure § 2022, at 188 n. 97, 193, § 2026 at 229–232 (noting, however, at n. 3 two cases to the contrary).

I am aware that the recent Fourth Circuit opinion in *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir. 1974), cert. denied, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975), takes a contrary position. There the court held that an attorney's opinion work product is absolutely immune from discovery not only in the action in which it was developed, but in all subsequent actions as well. The court reached this result by interpreting the language of Rule 26(b)(3) and by analyzing the policies underlying the work product rule. It stated:

> "In our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories. This is made clear by the Rule's use of the term 'shall' as opposed to 'may.'" Id. at 734.

The court reasoned that the sacrosanct protection of an attorney's mental processes is essential to the functioning of our adversary system. In its view, even the remote possibility that work product might come to light in exceptional circumstances would deter attorneys from freely recording their mental impressions and conclusions in a candid and dispassionate manner.

While an attorney's private thoughts are most certainly deserving of special protections, I believe that the concern for a lawyer's privacy must give way when the advice of counsel is directly at issue. Indeed, while purporting to establish a flat rule, even the court in *Duplan* seems to carve out an exception in precisely the situation at bar. Although Judge Widener in *Duplan* expressly rejected a number of cases wherein discovery of lawyer's opinion work product was permitted, the *Bird* case, discussed *infra,* was spared from total disapproval. Rather, *Bird* was interpreted to merely be applying "the established rule that a party cannot affirmatively assert reliance upon

an attorney's advice and then refuse to disclose such advice". 509 F.2d at 735.

Here, defendants are asserting reliance on their attorneys' advice and are even calling the attorneys as witnesses in their behalf. Even the *Duplan* court would apparently depart from its absolute rule and sanction disclosure of relevant work product to avoid obvious unfairness in such a case. At any rate, *Duplan* is clearly distinguishable on its facts since the advice of counsel was not injected as an issue in the case.

Therefore, I follow the *Bird* decision in holding that an attorney's opinion work product is discoverable where such information is directly at issue and the need for production is compelling.

The defendants point out that Judge Lord in *Bird* tailored his ruling to afford the greatest possible protection to the attorney's work product. I similarly appreciate the invasion into an attorney's work product which the discovery here involves. However, contrary to defendants' contention, I have determined that the subpoenas are drafted in a sufficiently narrow and precise fashion to require production of only those documents relevant to the issues of defendants' good faith in pursuing the prior litigation.

Accordingly, I reaffirm my previous ruling directing the production of relevant documents.

 I deny defendants' request for leave to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). I am not of the opinion that this order involves a controlling question of law in this litigation and that an immediate appeal from this order may materially advance the ultimate termination of the litigation.

The Ninth Circuit has ruled that an order to produce documents over a claim of privilege is not an appealable order within the meaning of 28 U.S.C. § 1292(b). *United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959). While other circuits have taken a contrary view in certain circumstances, I believe that an interlocutory appeal is inap-

propriate here since it would delay rather than expedite the ultimate determination of the case. See 4 J. Moore, *Federal Practice* ¶ 26.83[9.–2] at 26–608—26–611 (2d ed. 1975).