**KOCKUMS INDUSTRIES LIMITED, Plaintiff,**

v.

**SALEM EQUIPMENT, INC., Defendant.**

**Civ. No. 81–822–PA.**

United States District Court, D. Oregon.

March 23, 1983.

Arthur L. Whinston, Paul S. Angello, Klarquist, Sparkman, Campbell, Leigh, Whinston & Dellett, Portland, Or., for plaintiff.

George L. Kirklin, Scott P. Monfils, Spears, Lubersky, Campbell & Bledsoe, William A. Birdwell, Ingrid L. Swenson, Chernoff, Vilhauer, McClung, Birdwell & Stenzel, Portland, Or., for defendant.

## OPINION AND ORDER

PANNER, District Judge.

Plaintiff alleges defendant infringed its patented band saw mechanism.[1] Defendant denies infringement and counterclaims for unfair competition and antitrust violations. The question presented is whether defendant is entitled to production of certain documents for which plaintiff asserts a privilege. I find that it is, and order the documents produced.

## BACKGROUND

In its original complaint, plaintiff alleged defendant infringed its patent for a band mill air strain mechanism, U.S. Letters Patent 3,838,620 (the '620 patent), as well as two related patents, U.S. Letters Patents 3,946,634 (the '634 patent) and 3,810,409 (the '409 patent). On September 17, 1982, the parties stipulated the '634 patent invalid, void and unenforceable and that there was no infringement with respect to the '409 patent.[2] In its amended answer and counterclaims, filed September 29, 1982, defendant charged antitrust violations (counterclaim # 2) and unfair competition (counterclaim # 3).

On December 3, 1982, defendant moved to compel plaintiff to produce numerous documents for which plaintiff claimed a privilege. I heard oral argument on December 28, 1982, and then partially granted defendant's motion. Discovery Order (Dec. 30, 1982). I found that defendant had established a prima facie case of fraud as to the '409 and '634 patents, and ordered plaintiff to produce within ten (10) days "all documents pertaining to those patents, including the documents for which it asserts a privilege." *Id.*, p. 2. The Order invited

plaintiff to submit for determination *in camera* any document which it reasonably believed "should not be produced for good reason apart from this lawsuit . . . ." *Id.*

Plaintiff responded by producing for defendant twenty-one (21) additional documents. Plaintiff did not produce three other documents, nor submit them for determination *in camera,* but rather sought a clarification of the Order. On February 3, 1983, I ordered the disputed documents submitted to me *in camera.* The documents are identified as Nos. 19–21 on Schedule D of plaintiff's response to defendant's Third Request for Production of Documents, and all pertain to the '634 patent.[3]

After examining the documents, on February 10, 1983 I ordered production to defendant by February 22, 1983. Minute Order (Feb. 10, 1983). I also denied defendant's motion for attorneys' fees. *Id.* Plaintiff did not produce the documents as ordered but rather, on February 22, filed a motion for reconsideration or, alternatively, for certification for interlocutory appeal under 28 U.S.C. § 1292(b). On March 7, 1982, I heard oral argument on the motion. Defendant moved for imposition of sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(C). I DENY both motions.

## DISCUSSION

Plaintiff offers three reasons why the privileged status of these documents should not be vitiated. First, that there was no fraud in the procurement of the '634 patent. Second, that even if a prima facie showing of fraud is conceded, that these documents were not prepared in furtherance of the fraud. Third, that even if the attorney-client privilege is to be vitiated the attorney

---

1. Band saws are used in mills to cut logs into lumber and feature a long, thin, continuous saw blade driven by two coplanar wheels. Plaintiff developed a new way to apply tension to the saw blade—employing pneumatic pressure to apply a straining load—and this improvement has made for better cuts.

2. The validity and enforceability of the '409 patent are still at issue.

3. The documents in question are an August 29, 1978 letter, with attachments, from Mr. Wood, plaintiff's Vancouver, B.C. patent agent, to Mr. Ray Lippitt of the Washington, D.C. law firm of Cushman, Darby & Cushman, requesting a legal opinion on the validity of the '634 patent; Mr. Lippitt's September 7, 1978 legal opinion; and a November 23, 1978 letter, with attachments, from Mr. Wood summarizing and forwarding the legal opinion to Mr. Allen, plaintiff's then chief engineer.

work product immunity should nevertheless isolate the documents from disclosure.

■ A prima facie showing of fraud will vitiate the attorney-client privilege. *United States v. Shewfelt,* 455 F.2d 836, 840 (9th Cir.), *cert. denied,* 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). In this circuit, evidence of the fraud must be established independent of the privileged communications themselves. *Id. But cf., In Re Berkley & Co., Inc.,* 629 F.2d 548, 553 n. 9 (8th Cir.1980). A prima facie showing

> [N]eed not be such as to actually prove the disputed fact, [but] it must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed facts is left unrebutted.

*Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1220 (4th Cir.1976) (footnote and citations omitted).

■ Plaintiff sold an air strain band mill apparatus of the precise type claimed in the '634 patent more than one year prior to the filing of its U.S. patent application, without revealing this sale to the U.S. Patent Office as relevant prior art.[4] These facts rendered the patent invalid, void, and unenforceable. I found that defendant established a prima facie case of technical fraud independent of the three documents in dispute, indeed, well before they were submitted to me *in camera. See* Discovery Order (Dec. 30, 1982). Plaintiff has offered no new evidence to cause me to reconsider this finding. *But cf., Rohm & Haas Co. v. Dawson Chemical Co.,* 214 U.S.P.Q. 56 (S.D. Tex.1981) (following *in camera* review, no prima facie case of fraud established).

■ Generally, the attorney-client privilege or work product immunity will not be vitiated unless the attorney was retained in furtherance of the fraud. *See Hercules, Inc. v. EXXON Corp.,* 434 F.Supp. 136, 155 (D.Del.1977). *See also United States v. Hodge and Zweig,* 548 F.2d 1347, 1354 (9th Cir.1977). *Cf. Pfizer, Inc. v. Lord,* 456 F.2d 545 (8th Cir.1972). Plaintiff quite correctly argues that none of the disputed documents could have been prepared in furtherance of

a fraud on the U.S. Patent Office since all were prepared subsequent to the March 30, 1976 issuance date of the '634 patent.

Defendant, however, points to a substantial difference between *Hercules* and the present case. There was no claim in the former case that plaintiff sued upon a fraudulently obtained patent. Thus, any proof of fraudulent conduct subsequent to the patent's issuance date would have been immaterial to any issue in that suit. Here, by contrast, defendant argues that plaintiff brought suit on patents which it knew were obtained by fraud, are invalid or not infringed, or both, and are unenforceable. Thus, defendant contends, the fraud upon the Patent Office was perpetuated by the plaintiff's lawsuit and has become a fraud upon the court. *Cf. Portland Wire & Iron Works v. Barrier Corp.,* Civ. No. 75–1083 (D.Or. May 20, 1980) (Burns, J.), op. at 10–11 ("Communications made to further a business tort such as an antitrust violation may also vitiate the attorney-client privilege.")

■ Even if a patent defendant establishes a prima facie case of fraud on the Patent Office, the simple filing of a counterclaim by that party should not entitle it to discover all privileged communications which have occurred or been prepared subsequent to the date of issuance of the allegedly fraudulent patent. One of the main purposes of the attorney-client privilege is "to allow consultation in the interest of establishing a legal defense." *Hercules,* 434 F.Supp. at 155. That purpose would be seriously frustrated if the privileged status of communications turned on little more than a defendant's allegations.

A more satisfactory analytical framework than alleged "fraud on the court" is presented by the decision in *AM International, Inc. v. Eastman Kodak Co.,* Civ. No. 80–C–4016 (N.D.Ill. Oct. 15, 1982) (Decker, J.). Plaintiff AM International ("AMI") brought suit against Kodak alleging that defendant's Ektaprint Copier-Duplicator infringed four of plaintiff's patents. Kodak,

---

4. For a full treatment of these facts, *see infra,* op. at 174.

in turn, charged that AMI's suit was groundless and brought in bad faith to achieve objectives unrelated to the patents in issue. Kodak served AMI with interrogatories and a request for production of documents. AMI refused to respond to certain items claiming the benefit of its attorneys' work product privilege. Kodak then moved to compel discovery. The court reasoned:

One of Kodak's major allegations in its counterclaim is that AMI knowingly filed suit based on invalid patents in order to unfairly compete with Kodak. Kodak's success thus depends upon a showing that AMI pursued this suit knowing it would be unsuccessful on the merits. Directly at issue, then, are the opinions of AMI's attorneys as to the merits of the action and the validity of the underlying patents. Kodak has a particularized and compelling need for the production of the relevant work product of these attorneys.
. . . .

An attorney's work product is discoverable where such information is directly at issue and the need for production is compelling. These requirements are satisfied in the case at bar. A review of the record indicates that the recommendation to include the now disclaimed Sargis patent in this action was made by AMI's current trial counsel, . . . that it was considered and reviewed by another counsel of record, . . . and that it was also reviewed by AMI's then general patent counsel . . . . These same individuals advised AMI concerning the disclaimer of the Sargis patent. The advice of counsel regarding the Sargis patent, as well as other patents sued upon, is thus directly at issue in Kodak's counterclaim. AMI's knowledge and motivations when it issued the patents sued upon, when it sought to determine whether they were valid and infringed and when it sued Kodak, are all of critical importance to the resolution of this case . . . .

*Id.*, op. at 3–4, 6. *See Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 725–26 (N.D.Ill. 1978); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 931–33 (N.D.Cal.1976); *Bird v. Penn Central Co.*, 61 F.R.D. 43, 47 (E.D.Pa.1973); and *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 296 F.Supp. 979, 982 (E.D.Wisc.1969), cited by the court in support of its decision. *See also Donovan v. Fitzsimmons*, 90 F.R.D. 583, 588 (N.D.Ill. 1981) (discovery allowed over claim of attorney work product privilege where advice of counsel "a critical area of inquiry"); *Truck Insurance Exchange v. St. Paul Fire & Marine Ins. Co.*, 66 F.R.D. 129, 136 (E.D.Pa. 1975) (discovery allowed where activities of opposing counsel basis of moving party's defense); *Bourget v. Gov't. Employees Ins. Co.*, 48 F.R.D. 29 (D.Conn.1969) (discovery allowed following *in camera* inspection where moving party showed good cause to pierce attorney-client and work product privileges); 4 Moore's Federal Practice ¶ 26.64[4] at 26–447 (1982) ("[W]hen the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities . . . ."). *Compare Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir.1981), *aff'g*, 210 U.S. P.Q. 280 (N.D.Ill.1980) (holding work product privilege not absolute), with *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir.1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975) (holding opinion work product privilege absolute).

In discussing the *Duplan* case, the AMI court made these pertinent observations:

While an attorney's private thoughts and impressions are certainly deserving of particular protection, the court has concluded, as indicated in the preceding discussion, that this privacy must take a back seat when advice of counsel is directly at issue in the case. The fear of the *Duplan* court has merit only if discovery is permitted frequently or if the standards for allowing disclosure are unclear. By allowing discovery of opinion work product only in extraordinary circumstance, such as when advice of counsel is directly at issue, the inhibiting effect on the attorney should be minimal. Moreover, an absolute ban on discovery could very well impair the pursuit of

truth in many cases. As is the case in the instant action, opinion work product may be of paramount importance to the moving party's case . . . .

*AM International,* op. at 8 n. 1. *See Handgards,* 413 F.Supp. at 932–33.

■ I am persuaded that with but little refinement, the AMI approach will serve well in the instant proceeding. The refinements are, first, that defendant must establish a prima facie case as to a counterclaim to which the disputed documents would be material, and second, that the documents be examined *in camera* before their release. Both refinements have been met here.

■ Defendant has counterclaimed alleging unfair competition and antitrust violations. If a patent infringement suit is brought in bad faith and utilized to intimidate actual or potential competitors, then the antitrust laws are violated. Von Kalinowski, 7 Antitrust Laws and Trade Regulation ¶ 59.08[1][a] at 59–111 to –112 (1982). On the other hand, a good faith infringement suit will not violate the antitrust laws even though the patent proves to be invalid. *Id.* at 59–112 to –113. *See also id.,* v. 3, ¶ 9.03[2] at 9–62 to –63 (1982) (antitrust violation in procuring patent by knowing and wilful fraud). *Cf. Airtex Corp. v. Shelley Radiant Ceiling Co.,* 400 F.Supp. 170, 177 (N.D.Ill.1975), *aff'd,* 536 F.2d 145 (7th Cir.1976); *Technicon Instruments Corp. v. Coleman Instruments, Inc.,* 255 F.Supp. 630, 642 (N.D.Ill.1966), *aff'd,* 385 F.2d 391 (7th Cir.1967). Furthermore, an infringement suit is entitled to a presumption of good faith rebuttable only by clear and convincing evidence. *Carpet Seaming Tape Licensing Corp. v. Best Seam, Inc.,* 616 F.2d 1133, 1138–39 (9th Cir.1980); *Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, 996 (9th Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

Fed.R.Civ.P. 26(b)(3) provides that attorney work product is only discoverable "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The Rule goes on to provide that, in ordering discovery, the court shall "protect against" disclosure of opinion work product. *Id.* These provisions do not bar discovery of all opinion work product but do require that the party seeking discovery establish that the information sought "is directly at issue and the need for production is compelling," *AM International* op. at 6, that is, that an "extraordinary circumstance" exists. *Id.* at 8 n. 1.

■ Defendant here has a compelling need to discover the plaintiff's attorney work product, including legal opinions. Without access to such material, the defendant will have no chance to prove its potentially valid counterclaims. At the same time, the clear and convincing evidence standard protects the plaintiff for only serious misuse will overcome the presumption that this infringement action was instituted in good faith.

Yet the privileged status of the opinion work product of plaintiff's attorney cannot turn simply on whether the plaintiff has filed a counterclaim. Defendant must make a showing of "extraordinary circumstances." *AM International,* op. at 8 n. 1. I hold that extraordinary circumstances requires here a prima facie showing of unfair competition or antitrust violations, independent of the privileged communications themselves, but without reference to the strong presumption of good faith to which plaintiff will be entitled in the evaluation of the evidence at trial.[5] I conclude that de-

---

**5.** In the Ninth Circuit, the fraud exception to the attorney-client privilege applies only after a prima facie showing of fraud has been established by evidence independent of the privileged communications. *See Shewfelt,* 455 F.2d at 840–41. This is a sound approach, but one which cannot be strictly applied in the only somewhat analogous situation of a patent in-

fringement action allegedly brought in bad faith. To require that a patent defendant establish, without reliance on the disputed documents themselves, a case strong enough to overcome by clear and convincing evidence the presumption that an infringement suit is brought in good faith, before allowing discovery of privileged materials, would place a

fendant has adequately met its burden of showing extraordinary circumstances to negate plaintiff's claim of insulation by the work product immunity. My conclusion is based on the following chronology.

In approximately October, 1970, the band mill strain apparatus which is the subject of the '634 patent was installed at the Fort Hill Lumber Company sawmill at Grande Ronde, Oregon. The apparatus was sold to the company later that month after successful demonstration of its operation. In April, 1971, the band mill strain apparatus which is the subject of the '409 patent was shipped from British Columbia, Canada to Atlanta, Georgia, and was publicly displayed and demonstrated there at the Atlanta Machinery Exhibition during April 30 —May 3, 1971. On April 3, 1972, a single patent application covering the band mill apparatus described in the '634 and '409 patents was filed in the U.S. Patent and Trademark Office, claiming an effective filing date under 35 U.S.C. § 119 of April 6, 1971, the date when the counterpart British application had been filed. The original U.S. application was later divided into two separate parent applications. The Fort Hill sale was not disclosed to the Patent Office during the prosecution of the applications for the '409 and '634 patents. Nor was it disclosed in the May 29, 1973 filing of the application which matured into the '620 patent. In March, 1980, plaintiff filed an application for reissue of the '620 patent calling twenty (20) prior art references to the attention of the examiner, including the '409 patent, but not the Fort Hill sale or the Atlanta Exhibition.

The application which matured into the '634 and '409 patents was filed more than one year after the Fort Hill sale. Since the Fort Hill apparatus is identical to the apparatus disclosed in the '634 patent, and only slightly different from the apparatus disclosed in the parent application, the Fort Hill apparatus was clearly prior art that would have been considered highly pertinent to the patentability of the inventions claimed in both patents. The nondisclosure

of the Fort Hill sale violated 35 U.S.C. §§ 102(b), 103, and rendered the subject matter of the '634 patent unpatentable. On September 17, 1982, the parties stipulated the '634 patent invalid, void and unenforceable.

This chronology shows that plaintiff sued upon an invalid patent, and the evidence does not foreclose the possibility that plaintiff knew of the invalidity of the patent at the time of its suit and brought the suit in bad faith. Critical to a resolution of defendant's counterclaims is an examination of the opinions offered by plaintiff's attorney. Because defendant established a prima facie case of unfair competition independent of the disputed communications, I ordered the documents provided to me *in camera* for review. Minute Order (Feb. 3, 1983). Now that I have reviewed the documents, I order them produced for defendant. Accordingly, plaintiff's motion for reconsideration is DENIED.

■ Plaintiff has moved, in the alternative, for certification for interlocutory appeal to the U.S. Court of Appeals for the Federal Circuit. An interlocutory appeal to the Ninth Circuit could not be certified. *United States v. Woodbury*, 263 F.2d 784 (9th Cir.1959); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026–27 (9th Cir. 1982). An interlocutory appeal to the Federal Circuit would not materially advance the ultimate termination of this litigation. 28 U.S.C. § 1292(b). Plaintiff's alternative motion is DENIED.

■ Defendant has moved for the imposition of sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(C). While plaintiff could have advanced the resolution of this discovery dispute by providing the three documents to me *in camera* pursuant to my December 30, 1982 Order, rather than waiting until specifically ordered to do so on February 3, 1983, I find that plaintiff's opposition to the motion to compel was substantially justified. *See* Fed.R.Civ.P. 37(a)(4). Defendant's motion for sanctions is DENIED.

burden on the patent defendant virtually impossible to overcome.

The parties having been previously advised orally of my decision, this order is effective three days from the date of filing.

IT IS SO ORDERED.