**Clark ELLISON and M.P. Appleby, Jr., Petitioners,**

v.

**Honorable Karl GRAY, Judge of the District Court of Oklahoma County, Respondent.**

No. 62083.

Supreme Court of Oklahoma.

April 30, 1985.

George S. Corbyn, Jr., Ryan, Holloman, Corbyn & Geister, Oklahoma City, for petitioners.

William G. Paul and Anton J. Rupert, Crowe & Dunlevy, Oklahoma City, for respondent.

KAUGER, Justice.

The determinative issue presented is whether the Oklahoma Discovery Code, 12 O.S. 1982 Supp. § 3203(B)(2)[1] precludes discovery of an attorney's ordinary or opinion work product in an action for malicious prosecution if the defense of good faith

---

1. The Oklahoma Discovery Code, 12 O.S. 1982 Supp. § 3203(B)(2) provides:

"... Subject to the provisions of subsection B, paragraph 4 of this section, discovery may be obtained of documents and tangible things otherwise discoverable under subsection B, paragraph 1 of this section and prepared in anticipation of litigation or for trial by or for another party or by or for the representative of that other party, including his attorney, consultant,

surety, indemnitor, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. *In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other*

reliance on advice of counsel is raised. We find that under the circumstances presented, the statute is not an absolute bar to discovery.

On March 22, 1981, the petitioners, Clark Ellison and M.P. Appleby, Jr., attended an oil and gas lease auction, conducted by the Bureau of Indian Affairs. The respondent, An-Son, was present at the auction, and it was the successful high bidder on a 134-acre tract in Caddo County, Oklahoma. However, An-Son was not awarded the lease because private negotiations were conducted between the petitioners and the leasehold owners who, on April 3, 1981, executed a lease for $2,200,000.00.

On April 15, 1981, An-Son, et al, filed an action in the federal district court seeking cancellation of the petitioners' oil and gas lease. An-Son also sought injunctive relief to prevent assignment of the lease and to prohibit its development. On November 10, 1981, the case was dismissed for An-Son's failure to exhaust its administrative remedies. An-Son filed a motion to alter judgment on November 2, 1981, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure[2] in an attempt to reverse the court's earlier ruling of dismissal. The motion to alter judgment was denied on January 2, 1981 ..... The respondents did not appeal.

On March 30, 1982, petitioners brought suit for malicious prosecution in the district court of Oklahoma County to recover for damages allegedly caused by the federal litigation. The petitioners asserted that the pending federal action clouded their title to the lease, and that adjacent drilling condemned the leasehold. In answer to the action for malicious prosecution, the respondents raised the defense of good faith reliance on advice of counsel in filing the federal action. To prepare for trial, the petitioners moved for production of all the documents in the possession of the attorneys for the respondents concerning the federal litigation. The respondents voluntarily produced a portion of attorney-client documents from March 30, 1981 until November 10, 1981, the date of dismissal of the federal action. The respondents refused to produce any documents from the date of dismissal until the time to appeal had run.

The petitioners filed a motion to compel unlimited production of documents including the client files, timesheets, invoices, calendars, correspondence, telephone and telex records, and all other documents normally classified as ordinary work product. The motion to compel production of documents was denied. The petitioners urge this Court to assume original jurisdiction, and to grant a writ of mandamus ordering discovery without limitation including some materials which could be classified as opinion work product.

**THE DISCOVERY CODE, 12 O.S.SUPP. 1982 § 3203(B)(2), DOES NOT BAR FROM DISCOVERY THOSE PORTIONS OF THE WORK PRODUCT WHICH REPRESENT THE DISTILLED ADVICE, OPINION, OR COMMUNICATION.**

 The extraordinary relief of a writ of mandamus or prohibition is available under

---

*representative of a party concerning the litigation."* (Emphasis supplied)

A party may obtain, without the required showing provided for in this paragraph, a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of subsection A, paragraph 4 of Section 14 of the Discovery Code apply the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is:

a. A written statement signed or otherwise adopted or approved by the person making it, or

b. A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which substantially recites an oral statement by the person making it and contemporaneously recorded...."

2. Rule 59(e) of the Fed.Rules Civ.Proc., 28 U.S.C. (1982) provides:

"(e) Motion to alter or amend a judgment A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

proper circumstances to order or prohibit the production of evidence prior to trial. However, before appropriate relief may be granted, it must be shown that the trial court exceeded its authority or discretion in ordering or denying pretrial discovery.[3] The petitioners assert that they are entitled to compel discovery because the defense of good faith reliance on advice of counsel places the attorney's work product in issue; and, to prepare properly to depose the respondents' attorneys, and to prevent undue hardship in preparing for trial, full discovery must be permitted.

During the course of a particular representation, the attorney draws from various mental impressions consisting of conclusions, legal theories, and opinions, evaluations of strength and weakness, and inferences drawn from interviews of witnesses. The sum total of these impressions, when reduced to writing, is the attorney's work product. Only the distilled product which is communicated to the client, or any communication received by the client from counsel which is intermixed with work product, is discoverable. Ordinary work product consists of factual information garnered by counsel acting in a professional capacity in anticipation of litigation. It includes facts gathered from the parties and witnesses, and materials discovered through investigations of counsel or his/her agents. Although ordinary work product is cloaked with a qualified immunity, it may be discovered upon a showing of the inability to secure the substantial equivalent of the materials without undue hardship.[4] The opinion work product area is carved out to protect the right of counsel to privacy in the analysis and preparation

of the client's case.[5] Opinion work product includes the lawyer's trial strategies, theories, and inferences drawn from the research and investigative efforts of counsel. Historically, the thoughts of an attorney have been free from invasion, and the impressions, theories, trial tactics, and opinions of counsel have been sheltered from disclosure. Opinion work product enjoys a virtual immunity from discovery, and it may be discovered only under extraordinary circumstances.[6]

Although the two are closely related, an attorney's work product is not synonymous with the attorney-client privilege. The work product rule remains closely identified with the attorney-client privilege because work product represents efforts expended by the attorney during the course of the professional relationship. The attorney client privilege belongs to the client and must be invoked by the client. The attorney's work product exemption may be claimed by the attorney and not by the client; information which is not protected from discovery by the attorney-client privilege may nonetheless be exempt as work product.

One of the most perplexing discovery problems is the extent to which disclosure may be compelled. The Oklahoma Discovery Code, 12 O.S. 1982 Supp. § 3203(B)(2) tracks Rule 26(b)(3) of the Federal Rules of Civil Procedure. Even though we have not determined the degree of protection to be afforded attorney work product under § 3203(B)(2), the federal courts have addressed this troublesome issue under Rule 26(b)(3)[7] and its predecessor, Rule 34.

3. *Cowen v. Hughes,* 509 P.2d 461, 464 (Okla. 1973); *Carman v. Fishel,* 418 P.2d 963, 968 (Okla.1966).

4. *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977); see also, Moylen, "Protection of Opinion Work Under the Federal Rules of Civil Procedure," 64 Va.L.Rev. 333 (1978); and Smith, "The Potential for Discovery of Opinion Work Product under Rule 26(b)(3), 64 Iowa L.Rev. 103 (1978).

5. Moylen "Protection of Opinion Work Product under the Federal Rules of Civil Procedure",

note 4, id. See also Annot., "Development, Since *Hickman v. Taylor,* of Attorney's 'Work Product' Doctrine", 35 A.L.R.3d 412 (1971); and Annot., "Work Product Privilege As Applying To Material Prepared For Terminated Litigation Or For Claim Which Did Not Result In Litigation", 27 A.L.R.4th 568 (1984).

6. Note 4.

7. 28 U.S.C. Rule 26(b)(3) Fed.Rules Civ.Proc. (1983) provides:

The work product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495, 510–17, 67 S.Ct. 385, 393–96, 91 L.Ed. 451, 462–65 (1947), when the United States Supreme Court recognized that an attorney simultaneously must protect the rightful interest of his/her client,[8] while functioning with some degree of privacy free from unnecessary intrusions by adversary counsel. Without this protection, attorneys would hesitate to note their impressions because of the possibility of discovery by

"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. [In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.] A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provision of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded."

8. The Court said in *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–94, 91 L.Ed. 451, 462–463 (1947):
"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interest. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served. We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted.

. . . . .

If there should be a rare situation justifying production of these matters, petitioner's case is not of that type."

opposing counsel. In *Hickman,* the court found that some documents were covered by a qualified immunity from discovery. The Court held that while certain private memoranda, written statements of witnesses, and mental impressions or personal recollections, prepared or formed by an attorney in the course of professional duties for use in prosecuting the client's case and contained in the lawyer's files or mind were not protected by the attorney-client privilege, they were protected from discovery as the work product of the attorney. The Court held that in the absence of a strong showing of necessity, or a vigorous indication or claim that denial of discovery would unduly prejudice the preparation of the inquiring party's case, cause undue hardship, or result in injustice, discovery must be denied. *Hickman,* does not proscribe absolutely the discovery of opinion work product—it allows discovery only in rare instances.

The impact of *Hickman* has left the issue of strict immunity unanswered. The Federal Courts are split on opinion discovery: absolute immunity,[9] strict immunity with rare exceptions [10] and a balancing test [11] which holds that as the quantity of work product increases, the party requesting discovery must demonstrate a greater need for the materials.

In 1981, the United States Supreme Court again considered the question of immunity of opinion work product [12] in *Upjohn Co. v. U.S.,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Upjohn had been ordered by the trial court to produce questionnaires, memoranda and notes of interviews conducted between its attorneys and its employees. On appeal, the Supreme Court reversed the discovery order on the grounds that the magistrate had wrongfully applied the standard of substantial need and undue hardship articulated in Rule 26(b)(3). The Supreme Court

held that discovery of opinion work product is not available merely by a showing of substantial need and an inability to obtain the equivalent discovery without undue hardship. Although the Court refused to find that materials which concern an attorney's opinion work product are never discoverable, it held that the moving party had not demonstrated a showing of necessity and unavailability strong enough to compel discovery. Neither *Hickman* or *Upjohn* grant complete immunity to an attorney's opinion work product. *Hickman* holds that only on rare occasions should discovery be compelled, and *Upjohn* holds that the party seeking discovery failed sufficiently to present its case.

In *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.,* 211 F.Supp. 736 (N.D. Ill.1962) Allis-Chalmers claimed that certain statements made by its employees to counsel and certain memoranda prepared as a result of the interviews by its counsel were entitled to protection from discovery. The court found that Commonwealth had to show that there were special circumstances which made it essential to the preparation of the case and to the interest of justice that the materials be produced. The *Commonwealth* standards enumerated as fulfilling this requirement are: non-availability of witnesses, exclusive or superior opportunity for knowledge, on the spot statements, and change in circumstances. The court cited *People v. United States* 27 F.R.D. 261–62 (D.C.N.D.Cal.1961), in which the court said:

"Where ... it appears that one party has exclusive control over the circumstances surrounding an event and exclusive or superior opportunity to know or ascertain the facts, we believe that good cause exists to require that party's disclosure of such portions of any report as might contain the statements of witnesses or

**9.** *Duplan Corp v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730, 733 (4th Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975).

**10.** *In re Murphy,* see note 4, supra.

**11.** *ITT Corp. v. United Telephone Co.,* 60 F.R.D. 177, 180 (M.D.Fla.1973).

**12.** *Upjohn Co. v. U.S.,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

facts personally observed by the investigator even though, as here, the identity of potential witnesses has already been disclosed...."

The court in *Commonwealth* also found that after a showing of good cause, or exclusive or superior knowledge, that an *in camera* inspection of the documents by the court was the appropriate method to protect the interests of both parties.

■ The underlying cause of action which gives rise to this application for a writ of mandamus is one for malicious prosecution in which An-Son has raised the defense of good faith reliance upon advice of counsel. Generally, the absence of malice is established if the uncontroverted evidence indicates that a party has disclosed all the facts relating to the case within his/her knowledge to a competent attorney, and has acted honestly and in good faith upon the advice given.[13] The nature of the good faith defense concerns knowledge, legal theories and conclusions of An-Son's prior attorneys. Although facially the Discovery Code protects against this kind of discovery, exceptions may be made in cases where advice of counsel is clearly at issue.[14] An attorney's thoughts, impressions, views, strategy, conclusions, and other similar information generated by a lawyer in anticipation of litigation must be protected,[15] but these protections should not become a legal closet in which a party can hide information critical to the fact finding process. An absolute ban on discovery could cripple the effort to ferret out the truth in cases in which the essential issue is the attorney's work product.[16]

The teaching of *Carman v. Fishel*, 418 P.2d 963, 969, 971 (Okla.1966) is helpful.

In *Carman*, the Court held that what constitutes good cause authorizing the trial court to require production necessarily depends to a considerable degree upon the particular circumstances of each case and upon consideration of practical convenience. A showing that the witnesses are no longer available or can be reached only with difficulty, or although still available are hostile and refuse to furnish information, usually is necessary.[17] These criteria apply in the matter before us. The material needed in this matter exclusively is within respondent's control because only the counsel for respondent knows whether respondents fully and fairly disclosed all material facts to him prior to the filing of suit in the federal court. Practically, this information would be impossible to discover in any other way.

■ We cannot concede that material acquired and prepared by an attorney in anticipation of litigation or preparation for trial absolutely is privileged, nor can we permit these materials to be discovered indiscriminately.[18] We find that discovery of ordinary work product should be granted only upon a convincing showing that the substantial equivalent of the materials sought cannot be obtained without undue hardship, if at all. In addition, discovery of opinion work product requires exclusivity of relevant knowledge within the control of counsel which has been placed in issue by the party who seeks to prevent disclosure, and pertains only to the extracted prodigy which is communicated to the client or to any communications received by the client from counsel which is interwoven with opinion work product relating to advice of

**13.** *Lewis v. Crystal Gas Company*, 532 P.2d 431, 433 (Okla.1975).

**14.** Smith, "The Potential for Discovery of Opinion Work Product under Rule 26(b)(3)," see note 4 supra; *Kockums Industries v. Salem Equipment*, 561 F.Supp. 168, 172 (1983); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 931 (1976); *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 31 (1980); *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 725 (1978).

**15.** 4 Moore's Federal Practice § 26.64 p. 348–350 (1984).

**16.** *Handgards, Inc. v. Johnson & Johnson*, see note 14, supra.

**17.** *Barr Marine Products Co., Inc. v. Borg-Warner*, 84 F.R.D. 631, 633 (1979).

**18.** See 4 Moore's Federal Practice at p. 350, note 15, supra.

counsel.[19] We also find that these prerequisites are present in this case, as they frequently may be in malicious prosecution cases, where the advice of counsel defense is offered. Notwithstanding our conclusion that the opinion work product immunity extends to documents prepared in anticipation of previous, terminated litigation or threatened litigation, we cannot sustain the broad assertions of work product immunity to prevent discovery of the documents here sought. Whether styled as a showing of a sufficiently compelling need or as a waiver of the work product immunity, we find that the respondents' reliance, in this litigation upon the advice of counsel as a major justification for their actions, renders the advice and actions of counsel a central issue, and deimmunizes the attorney's opinion work product.[20]

 We do not intend, however, for the discovery to include all the documents which were an outgrowth of the meetings with An-Son because this might include the attorney's analysis of the legal implications present in the remarks made or an outline of the attorney's legal theory for the ultimate presentation of the case. We limit the discovery to documents which contain verbatim or in substance the remarks made by An-Son at the meetings, and any questions asked by the attorney which prompted the replies which are relevant to the subject matter of this action or to communications involving advice of counsel. The documents shall be presented to the district court of Oklahoma County for an *in camera* inspection by the trial court to determine which materials are discoverable by these guidelines.[21]

Generally, a case does not become final until the appeal or the right to appeal is exhausted.[22] Therefore, petitioners are entitled to discovery of communications between respondents and their attorney pertaining to the federal litigation up to and including the last day respondents had to appeal the federal district court's order of dismissal under the procedures we have outlined.

ORIGINAL JURISDICTION ASSUMED. WRIT OF MANDAMUS ISSUED.

DOOLIN, V.C.J., and LAVENDER, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

SIMMS, C.J., concurs in part: dissents in part.

HODGES and HARGRAVE, JJ., dissent.

---

19. *Kockums Industries v. Salem Equipment,* see note 14 supra.

20. *Kockums Industries v. Salem Equipment; Handgards, Inc. v. Johnson & Johnson; Ohio-Sealy Mattress Mfg. Co. v. Kaplan; Panter v. Marshall Field & Co.* See note 14, supra.

21. *When a given document is found to contain both discoverable and nondiscoverable material, the judge shall release for inspection only the discoverable part.*

22. A case is final from which no appeal is available. *United States v. Tod,* 1 F.2d 246, 252 (2d.Cir.1924).