SNK CORPORATION OF AMERICA;
and SNK Corporation, Plaintiff,

v.

ATLUS DREAM ENTERTAINMENT
CO., LTD.; Atlus Co., Ltd.; and Im-
ageware Software, Inc., Defendant.

No. C–98 21035 JF EAI.

United States District Court,
N.D. California,
San Jose Division.

June 4, 1999.

Theodore Russell, D. Ronald Ryland, Phil-
ip F. Atkins–Pattenson, Sheppard, Mullin,
Richter & Hampton LLP, San Francisco,
CA, for plaintiff.

Alexander F. Wiles, David I. Gindler,
Theodore H. Frank, Irell & Manella LLP,
Los Angeles, CA, for defendant.

ORDER GRANTING IN PART AND DE-
    NYING IN PART PLAINTIFF'S MO-
    TION TO COMPEL THIRD PARTY
    IRELL & MANELLA LLP TO PRO-
    DUCE DOCUMENTS PURSUANT TO
    SUBPOENA *DUCES TECUM*

INFANTE, United States Magistrate
Judge.

## I.  INTRODUCTION

The events underlying the present action
stem from an unsuccessful patent infringe-
ment suit.  In November, 1997, Defendant
Atlus Dream Entertainment Co., Ltd. ("At-
lus Dream") brought a patent infringement
claim against plaintiffs SNK Corporation of
America and SNK Corporation (collectively

"SNK") and, less than five months later, withdrew the claim after allegedly discovering certain information from third party witnesses. Following the dismissal of the infringement claim, SNK sued defendants Atlus Dream, Atlus Co., Ltd., and Image-Ware Software, Inc. for damages incurred from having to defend the infringement claim. One of SNK's claims is for malicious prosecution, which defendants Atlus Dream Entertainment Co., Ltd. and Atlus Co., Ltd. (collectively "Atlus") defend by asserting that they had probable cause to file the infringement suit because they relied on advice of counsel in instituting the infringement suit. Plaintiff SNK served a subpoena *duces tecum* on the law firm of Irell & Manella LLP ("the Irell law firm") to discover certain documents relating to the dismissed infringement suit.[1]

Presently before the Court is plaintiff SNK's motion to compel the Irell law firm to produce all documents responsive to the subpoena. The Irell law firm has produced some responsive documents, but withholds the remaining responsive documents on grounds of attorney-client privilege and work product immunity. The Irell law firm and Atlus admit that Atlus's reliance on advice of counsel waives the applicable privilege and immunity. They argue, however, that the scope of that waiver is narrow and is limited in time and subject matter. SNK, of course, argues that the waiver is broad and is not limited in time or subject matter.

Having considered the parties' written submissions and the oral arguments presented at the hearing of May 17, 1999, and good cause appearing, the Court GRANTS IN PART and DENIES IN PART SNK's motion to compel in the manner and for the reasons set forth below.

## II. BACKGROUND

### A. The Photo Sticker Booth Market

Plaintiff SNK and defendant Atlus compete in the photo sticker booth market. A photo sticker booth is a coin-operated, self-service machine that digitally combines a user's picture with a pre-stored background image, and then prints multiple copies of the combined image onto a sheet of stickers. The U.S. market for photo sticker booths apparently emerged after photo sticker booths had already enjoyed popularity in Japan. SNK's Motion, at 4.

Even though Atlus had been one of the dominant sellers of photo sticker booths in Japan, SNK beat Atlus to the U.S. market. SNK's Motion, at 4. SNK introduced the NeoPrint® booth in the U.S. in September, 1996. Some time in 1997, several months after SNK began selling its NeoPrint® booths, Atlus introduced the Print Club booth in the U.S. *Id.*

By at least July, 1997, Atlus had considered the impact of SNK's earlier entry into the U.S. market. An Atlus executive sent an internal communication on July 9, 1997, discussing Atlus's strategy for dealing with competition by SNK. Hersey Dec., Exh. A. In another internal communication sent on August 22, 1997, the same Atlus executive compared features of the Atlus Print Club booth with photo sticker booths of other manufacturers, including SNK's NeoPrint® booth. Hersey Dec., Exh. C.

### B. Atlus's Unsuccessful Suit For Infringement of the '386 Patent

U.S. Patent No. 5,343,386 discloses and claims a booth that digitally combines an image of a user with a pre-stored background image and then prints the resulting composite image. The application to which the '386 patent claims priority was filed on August 21, 1989. Part of the application filing included an oath from the sole named inventor, Pamela L. Barber, stating that the invention had not been offered for sale more than one year before the application was filed. The '386 patent issued on August 30, 1994, and is assigned to defendant Image-Ware Software, Inc.

The record indicates that Atlus Co. (hereinafter referred to as "Atlus Japan") learned

---

1. The Irell law firm represented Atlus Dream Entertainment Co. Ltd. in the earlier patent infringement suit and represents defendants Atlus Dream Entertainment Co., Ltd. and Atlus Co., Ltd. in the present action.

about the '386 patent some time before September, 1996. Atlus Japan retained U.S. counsel to evaluate validity and infringement of the '386 patent, and received a first opinion letter dated September 9, 1996, concluding that the independent claims of the '386 patent were invalid over prior art, and a second opinion letter dated October 15, 1996, concluding that the Atlus Print Club did not infringe claims of the '386 patent. Hersey Dec., Exhs. D and E.

In 1997, Atlus Japan and ImageWare entered into a series of transactions, which included ImageWare conveying to Atlus Japan a license under the '386 patent. Hersey Dec., Exh. F (Gindler Dec. of May 11, 1998), ¶ 3. Atlus Japan contends that it understood the license to be exclusive in nature and transferred its rights in the '386 patent to Atlus Dream. *Id.*

On November 25, 1997, Atlus Dream filed a patent infringement suit against SNK and another company, American Photo Booths, Inc. In its complaint, Atlus Dream alleged, among other things, that (1) Atlus Dream was the exclusive licensee of the '386 patent and had the exclusive right to enforce the patent; (2) the '386 patent was legally issued; and (3) SNK's manufacture and sale of the SNK NeoPrint in the U.S. infringes the '386 patent. Wiles Dec., Exh. H. On February 17, 1998, Atlus Dream filed an amended complaint in which it repeated these allegations.[2] Wiles Dec., Exh. I. On March 6, 1998, SNK filed a counterclaim against Atlus for a declaratory judgment that the '386 patent is invalid and not infringed. Hersey Dec., Exh. F (Gindler Dec. of May 11, 1998), ¶ 6.

Informal discovery during the infringement suit provided the Irell law firm with information highly relevant to the validity of the '386 patent. On February 5, 1998, nearly two weeks before Atlus Dream filed its amended complaint, attorneys from the Irell law firm met with Ms. Barber (the sole inventor named on the '386 patent) and learned that on-sale bar activities by ImageWare (or its predecessor company) may have occurred that would invalidate the '386 patent. Wiles

Dec., Exh. C (portion of transcript of Gindler deposition taken on April 13, 1999). Upon learning of the activities, Mr. David Gindler, one of the Irell attorneys, obtained a newspaper article mentioned by Ms. Barber substantiating the on-sale bar and contacted an attorney from the law firm responsible for prosecuting the '386 patent (Knobbe, Martes, Olsen & Bear, LLP, hereinafter "the Knobbe law firm") to request additional information about the on-sale activities. *Id.* Mr. Gindler received the requested documents on March 4, 1998. Wiles Dec., Exh. C (portion of transcript of Gindler deposition taken on April 14, 1999). Attorneys from the Irell law firm also conducted an informal inspection of ImageWare's documents. Wiles Dec., Exh. C (portion of transcript of Gindler deposition taken on April 13, 1999).

For the most part, formal discovery was delayed until the court entered a protective order governing the use and disclosure of confidential documents. Several third party witnesses were served with discovery requests, including ImageWare, Ms. Barber and the Knobbe law firm. Hersey Dec., Exh. F (Gindler Dec. of May 11, 1998), ¶¶ 2, 7, 9. These witnesses did not formally produce documents until after the court entered the protective order on March 13, 1998. *Id.* at ¶ 8–10.

According to Atlus, ImageWare produced "many of the more significant documents" during the last week of March and first week of April, 1998. *Id.* at ¶ 9. One of the documents produced on or about March 31, 1998, evidences a nonexclusive license of the '386 patent conveyed to a third party predating Atlus Japan's purported exclusive license agreement. *Id.* at ¶ 12. Other documents suggested material issues concerning on-sale bar activities. *Id.* at ¶ 13.

On April 10, 1998, three days before Ms. Barber was scheduled to be deposed, Atlus decided that it was no longer interested in pursuing its infringement claims and informed SNK's counsel of its decision by facsimile. *Id.* at ¶ 14. In several correspondences, the parties argued over whether Ms.

---

2. The only difference between the originally filed complaint and the first amended complaint is that Atlus Dream eliminated SNK from its claim

for unjust enrichment. The complaints are otherwise identical. Wiles Dec., ¶ 19.

Barber should still be deposed, in light of Atlus's decision. *Id.* at ¶¶ 15–27. On April 15, 1998, Atlus filed a written statement with the court covenanting not to sue any of the defendants for infringement of the '386 patent. *Id.* at ¶ 28. ImageWare filed a similar statement on April 16, 1998. *Id.* at ¶ 29. SNK, however, opposed dismissal of Atlus's patent infringement claim and declined to withdraw its counterclaims for declaratory judgment. Irell's Opposition, at 6.

On May 11, 1998, Atlus Dream filed a motion to dismiss its claims of patent infringement and SNK's counterclaims for declaratory judgment. In support of its motion, Atlus Dream submitted a declaration ("the Gindler declaration") in which Mr. Gindler of the Irell law firm stated that Atlus Dream decided to dismiss its infringement claims after receiving documents from third parties showing a potential on-sale bar and conveyance of a nonexclusive license predating Atlus Japan's exclusive license. Hersey Dec., Exh. F (Gindler Dec. of May 11, 1998); Irell's Opposition, at 6. In the declaration, Mr. Gindler refers to "[Atlus Dream's] developing understanding of the facts." On June 1, 1998, the court dismissed Atlus Dream's infringement claim with prejudice and also dismissed SNK's counterclaims. Irell's Opposition, at 6.

## C. SNK's Present Action Against Atlus

On October 14, 1998, SNK filed the present action against Atlus, followed shortly thereafter by a First Amended Complaint. Irell's Opposition, at 7. The First Amended Complaint included 11 claims for relief. These claims alleged federal and state antitrust violations as well as various California law business torts.

On December 1, 1998, Atlus moved to dismiss the First Amended Complaint for failure to state a claim upon which relief could be granted. Atlus also moved to transfer venue. In support of these motions, Atlus

submitted the Gindler declaration. On February 24, 1999, the Court entered an order granting Atlus's motion to dismiss the federal claims and reserving judgment on the state law claims. The Court also granted SNK leave to amend its complaint. The Court denied Atlus's motion to transfer.

On March 24, 1999, SNK filed its Second Amended Complaint which also included 11 claims for relief. The fifth claim for relief is a claim for malicious prosecution against all of the defendants. In support of this claim, SNK asserts that Atlus Dream "filed" the infringement suit while falsely alleging that it possessed the exclusive rights to enforce the '386 patent, that the '386 patent was valid, and that SNK's NeoPrint machines infringed the '386 patent. Wiles Dec., Exh. F, ¶ 60. SNK also asserts that defendants lacked probable cause in "bringing and prosecuting" the infringement suit against SNK because the '386 patent was invalid, SNK's NeoPrint machine does not infringe, and Atlus Dream did not possess exclusive rights to the '386 patent. *Id.* at ¶ 61.

In its answer to the Second Amended Complaint, Atlus responded to the malicious prosecution claim by denying the allegations and raising, as its second affirmative defense, reliance on advice of counsel in instituting the infringement suit. Wiles Dec., Exh. G.

## D. The Present Discovery Dispute

SNK served the Irell law firm with a subpoena *duces tecum* on January 12, 1999.[3] The subpoena describes 13 categories of documents to be produced by the Irell law firm.[4] In general, the requested documents relate to the validity of, the infringement of, and standing to sue under the '386 patent.

In its first supplemental response to the subpoena dated April 16, 1999, the Irell law firm stated that Atlus was waiving the attorney-client privilege and attorney work product doctrine with limitations in time and in

---

**3.** Three subpoenas were apparently served on the Irell law firm or individual partners of the Irell law firm on January 12, 1999. For purposes of this motion, however, SNK seeks production of documents responsive to only one of those subpoenas, which is attached as Exhibit J to the Hersey declaration.

**4.** Although the last document category contained in Exhibit A of the subpoena *duces tecum* is number 11, Exhibit A actually lists 13 categories. Two categories incorrectly bear the number 6, and another two incorrectly bear the number 7.

subject matter. Specifically, the Irell law firm purported to limit Atlus's waiver to the following:

attorney-client communications that occurred or work product that was generated on or before November 25, 1997, relating to (1) validity or infringement of United States Patent No. 5,343,386 ("386 patent"); or (2) efforts to obtain a license to, or acquire any interest in, the '386 patent (the "Limited Waiver").

Hersey Dec., Exh. L, at 3. Reference to "Limited Waiver" is found in Irell's specific responses to request numbers 2–5, 6 (second occurrence), and 8–10. *Id.* The Irell law firm states that in response to the subpoena it has produced over 22,000 pages, which includes (1) every attorney-client communication occurring before the infringement suit was filed relating to validity or infringement of the '386 patent, and licensing matters that SNK contends deprived Atlus Dream of standing to sue under the '386 patent (collectively "the Probable Cause Issues"); (2) all work product created before the infringement suit was filed related to the Probable Cause Issues; (3) every document, regardless of date, that records communications regarding the Probable Cause Issues that occurred before the infringement suit was filed; and (4) every document provided by Atlus to the Irell law firm, provided by third parties to Atlus or Irell, or located by the Irell law firm in its searches, together with information about when Atlus or its attorneys learned of those documents. Irell's Opposition, at. 2–3. In addition, the Irell law firm produced a four-volume privilege log listing over 1,500 documents withheld on the grounds of attorney-client privilege and/or work product immunity. Hersey Dec., Exh. O.

On April 19, 1999, plaintiff SNK moved to compel the Irell law firm to produce all documents responsive to the subpoena that have been withheld on the basis of attorney-client privilege or work product immunity. In its moving papers, SNK argues that Atlus's attempts to limit the scope of its waiver are unsupported and that the waiver applies to all of the documents responsive to the subpoena. SNK offers several bases for finding a broad waiver. First, by injecting its reliance on the advice of counsel into the case, Atlus places its state of mind, its counsel's state of mind, and all communications with its counsel at issue. According to SNK, the temporal and subject matter limitations imposed by Atlus distort the truth finding process and would preclude SNK from fairly challenging the advice of counsel defense. SNK alleges that some of the information already obtained through limited discovery contradicts Atlus's reliance on advice of counsel defense. Second, SNK argues that Atlus's voluntary disclosure of privileged documents relating to the same subject matter as the withheld documents and submission of the Gindler declaration give rise to a broad waiver that is independent of the waiver based on the advice of counsel defense.

The Irell law firm and Atlus filed an opposition to the motion to compel on May 3, 1999. Atlus contends that its reliance on the advice of counsel relates to only one subject (whether it had probable cause to initiate the infringement suit) and therefore its waiver is limited to that subject. Atlus relies heavily on *Professional Real Estate Investors, Inc. v. Columbia Pictures,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) as establishing that probable cause is determined according to an objective standard and argues that the irrelevance of subjective intent to probable cause precludes discovery of documents relating to subjective intent. Atlus also argues that SNK's complaint does not allege that Atlus Dream should have dismissed the infringement suit after the filing date, but before the withdrawal date, based on facts without probable cause after learning of new facts, and therefore Atlus has not had any reason to consider an advice of counsel defense for the *maintenance* of the infringement case. Finally, Atlus contends that neither the production of documents nor the Gindler declaration serves as an independent basis for waiver. The produced documents fall within the limited waiver outlined by Atlus, and the Gindler declaration does not reveal any confidential attorney-client communications or work product.

In a reply filed on May 7, 1999, SNK points out alleged mischaracterizations and

addresses arguments in Atlus's opposition. SNK argues that Atlus cannot rely on the advice of counsel defense to show probable cause for only part of the malicious prosecution claim (i.e., bad faith filing of the infringement suit), and not the rest of the claim (i.e., bad faith maintaining of the infringement suit). SNK also argues that it is entitled to the withheld documents to test Atlus's good faith reliance on legal advice, one of the elements of the advice of counsel defense. SNK further argues that Atlus has withheld certain information characterized by Atlus as "strategy," even though that information is encompassed by Atlus's own limited waiver.

## III. LEGAL STANDARD

The parties do not dispute that Atlus's reliance on its advice of counsel waives applicable attorney-client privilege and work product immunity. What they dispute is the scope of that waiver. Determining the scope of waiver is in some measure within the discretion of the Court, based on the pertinent facts and guided by the relevant case law.[5] *Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D.Cal.1997). Because the attorney-client privilege and work product doctrine have different standards for waiver, they must be considered separately.

■ Starting with waiver of the attorney-client privilege, courts have found the injection of the advice of counsel to waive "the attorney-client privilege as to communications and documents relating to the advice." *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D.Cal.1976). The scope of the waiver is governed by a rule of fairness. *Id.* Fairness dictates that a party may not use the attorney-client privilege as both a sword and a shield. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (finding implicit waiver of privilege where defendant claimed to have relied on advice of counsel). A party, therefore, may not selectively disclose privileged communi-

cations that it considers helpful while claiming privilege on damaging communications relating to the same subject. *Handgards*, 413 F.Supp. at 929. A court ultimately must be guided by "the subject matter of the documents disclosed, balanced by the need to protect the frankness of the client disclosure and to preclude unfair partial disclosures." *Starsight Telecast, Inc. v. Gemstar Development Corp.*, 158 F.R.D. 650 (N.D.Cal.1994) (internal quotations omitted).

Waiver of the attorney-client privilege, however, does not necessarily lead to waiver of work product immunity. *Handgards*, 413 F.Supp. at 929. This is so because the work product doctrine and attorney-client privilege serve different purposes. *Id.* at 929–30. The purpose of the attorney-client privilege is to encourage clients to provide full and complete disclosure of information to their attorneys. *Id.* The purpose of the work product is to protect the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery. *Id.* at 930. Consideration of whether work product protection has been waived requires a court to balance competing interests: "the need for discovery" with "the right of an attorney to retain the benefits of his own research." *Id.* at 932. An attorney's opinion work product may be discoverable "where such information is directly at issue and the need for production is compelling." *Id.* at 933. Like with waiver of the attorney-client privilege, however, fairness principles should be applied in considering whether work product immunity has been waived. *Mushroom Assocs. v. Monterey Mushrooms Inc.*, 24 USPQ2d 1767, 1770, 1992 WL 442892 (N.D.Cal.1992).

In cases where the attorney-client privilege was waived due to a party's reliance on advice of counsel, courts have sometime found a more limited waiver of work product protection. For example, courts have recognized an enhanced interest in protecting work product generated after the filing of a

---

**5.** The Court applies the federal common law of privilege to all of the claims raised in this litigation. *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D.Cal.1978) ("in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation."). Even if federal common law is not applicable, the Court finds that applying the California common law of privilege would not alter this Court's analysis or dictate a different outcome.

lawsuit. *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*, 994 F.Supp. 1202, 1205–06 (C.D.Cal.1998) (no waiver of work product protection after filing of lawsuit because there is an "enhanced interest in protecting against disclosure of trial strategy and planning" and therefore "the balance of competing interests shifts at the time the lawsuit is filed."). Some courts have found that the advice of counsel defense does not waive protection for work product that was not communicated to the client. *E.g., Steelcase Inc. v. Haworth, Inc.*, 954 F.Supp. 1195, 1198–99 (W.D.Mich.1997) (reliance on advice of counsel does not waive protection for uncommunicated work product). *But see Dunhall*, 994 F.Supp. at 1204–05 (reliance on advice of counsel waives protection for uncommunicated work product); *Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 544–47 (N.D.Cal.1997) (same).

These waiver principles should not be applied in the abstract and must be considered in the context of the relevant issues in the case. One formulation of a malicious prosecution claim requires proof that (1) the prior action was instituted by the defendant; (2) the defendant lacked probable cause to bring the action; and (3) the defendant initiated the action with malice. *Bertero v. National General Corp.*, 13 Cal.3d 43, 51, 118 Cal.Rptr. 184, 529 P.2d 608 (1974). A showing of probable cause immunizes a defendant from antitrust liability for bringing an unsuccessful prior action, regardless of the defendant's subjective intent for bringing the action. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). A defendant may show probable cause by establishing reliance on advice of counsel, which one case required that the defendant (1) consulted counsel; (2) disclosed all material facts to counsel; (3) were advised that they had a good cause of action; and (4) honestly acted upon the advice of counsel. *Chromatic Communications Enterprises, Inc. v. Business Guides, Inc.*, 1993 WL 311503 at *12, No. C–91–4186–DLJ, 1993 U.S.Dist. LEXIS 11388, at *25 n. 15 (N.D.Cal.1993). Discoverable information must relate to either a claim or defense and

need not be admissible, but only appear to be "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

## IV. DISCUSSION

SNK argues three bases for waiver: Atlus's reliance on advice of counsel, production of privileged documents, and submission of the Gindler declaration. Atlus argues that the waiver arises from its reliance on advice of counsel and erects what it contends are appropriate limitations based on its limited purpose for relying on advice of counsel—to show that it had probable cause in *instituting* the infringement action.

■ At the outset, the Court finds that Atlus's production of otherwise privileged documents and Atlus's submission of the Gindler declaration do not give rise to a waiver that is independent of Atlus's reliance on advice of counsel. Atlus has only produced documents falling within the limited waiver it constructed. Whether the limitations of this waiver are proper is not affected by Atlus's production of documents falling within the limited waiver. As for the Gindler declaration, SNK does not point to any portion of the declaration that reveals the substance of confidential attorney-client communications or confidential attorney work product. That Atlus acted in a manner consistent with advice it may have received from counsel does not waive privilege. *See Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D.Cal.1997) ("a pleading would not effect a waiver unless the pleading disclosed specific lawyer-client communications, even if the substance of the pleading tracked what a lawyer had confidentially advised the client.")

■ The remaining basis for waiver is Atlus's reliance on advice of counsel. The Court must consider whether the two limitations erected by Atlus correctly define the scope of the waiver. Because events occurring during the infringement suit trigger different interests and considerations, the Court will separately address the scope of waiver in three different time periods.

### A. Period I: Before (and including) November 25, 1997

On November 25, 1997, Atlus Dream filed its original complaint claiming that SNK infringed the '386 patent. For this period, Atlus has already produced attorney-client communications and work product limited to the subject matter of (1) validity or infringement of the '386 patent; or (2) efforts to obtain a license to, or acquire any interest in, the '386 patent. Atlus has also produced documents, regardless of when generated, that record such communications occurring before November 25, 1997, and documents that it provided to the Irell law firm, or that third parties provided to it or the Irell law firm, or that the Irell law firm located in its searches. Atlus has not produced any other privileged documents, including documents relating to "strategy."

Applying a rule of fairness and balancing the interests of the parties, the Court finds that Atlus's waiver of attorney-client privilege extends beyond the subject matter limitations imposed by Atlus. In response to SNK's claim for malicious prosecution, Atlus has waived privilege to show that it had probable cause based on its reliance on advice of counsel. Atlus's subjective intent for bringing the infringement and its understanding of the merits of such a suit may be highly probative of whether Atlus honestly acted upon advice of counsel and, at the very least, would be "relevant" under Rule 26(b)(1) and reasonably calculated to lead to the discovery of admissible evidence. In addition, Atlus's litigation strategy may also be highly probative of Atlus's good faith reliance on advice of counsel. Indeed, the circumstances of this case suggest that the discovery of relevant evidence is more than just a possibility. Atlus's subject matter limitations do not permit SNK a fair opportunity to discover this relevant information and, without such information, SNK will be unable to fairly test Atlus's defense. It would be unfair to allow Atlus to produce privileged information to establish its defense and prevent SNK from discovering information it needs to test that defense. While the inter-

est of encouraging frank disclosure between Atlus and its counsel is important, the Court finds that this interest is outweighed by the need to be fair to SNK to allow it to test the defense that Atlus injected into the case.

The Court recognizes that just because some communications may be relevant, not all communications in this time period are relevant. Mindful of this and balancing the interests, the Court finds that Atlus's reliance on advice of counsel waives attorney-client privilege over all attorney-client communications occurring in this pre-lawsuit period relating to the following [6]:

(1) validity or infringement of the '386 patent;

(2) licensing of the '386 patent as it relates to Atlus Dream's standing to sue under the '386 patent;

(3) Atlus Dream's decision of whether and when to sue SNK for infringement of the '386 patent;

(4) the purpose for suing SNK for infringement of the '386 patent and how the infringement suit would achieve that purpose;

(5) the merits of a claim or potential claim filed by Atlus Dream against SNK for infringement of the '386 patent; and

(6) the litigation strategy for enforcing the '386 patent against SNK.

Atlus's reliance on *Professional Real Estate* to preclude discovery of any information relating to Atlus's subjective intent is misplaced for several reasons. First, in *Professional Real Estate*, the predicate facts of the underlying proceeding were undisputed such that a court could determine probable cause as a matter of law. *Professional Real Estate*, 508 U.S. at 63, 113 S.Ct. 1920. Here, in contrast, SNK is attempting to discover information about the predicate facts, which are not undisputed. Second, the Supreme Court in *Professional Real Estate* denied plaintiff's request for further discovery because subjective intent was "rendered irrelevant" by the finding that probable cause existed. *Id.* at 65–66, 113 S.Ct. 1920. Here, the present case is in the discovery phase.

---

**6.** The Irell law firm has represented that it has already produced attorney-client communica-

tions and work product materials before November 25, 1997, relating to the first two categories.

Absent a finding that probable cause exists, Atlus's state of mind is at issue and subjective intent is relevant.

With respect to work product immunity, the Court finds that Atlus's waiver extends beyond Atlus's subject matter limitation. Again, fairness principles favor SNK's discovery of information sufficient for it to test Atlus's advice of counsel defense. Work product, including uncommunicated work product, may reveal communications between Atlus and its counsel and would be highly probative of what information Atlus's counsel considered, the reasonableness of its advice, and whether Atlus relied on the advice in good faith. SNK's need to discover this information, out of fairness, outweighs the interest in protecting this work product, especially considering that the infringement suit had not yet been filed. Accordingly, the Court finds that Atlus's reliance on advice of counsel waives work product protection over all work product materials generated in this pre-lawsuit period relating to the following:

(1) validity or infringement of the '386 patent;

(2) licensing of the '386 patent as it relates to Atlus Dream's standing to sue under the '386 patent;

(3) Atlus Dream's decision of whether and when to sue SNK for infringement of the '386 patent;

(4) the purpose for suing SNK for infringement of the '386 patent and how the infringement suit would achieve that purpose;

(5) the merits of a claim or potential claim filed by Atlus Dream against SNK for infringement of the '386 patent; and

(6) the litigation strategy for enforcing the '386 patent against SNK.

## B. Period II: November 26, 1997 to (and including) April 10, 1998

For this period, Atlus has not provided any privileged documents, with the exception of documents that record communications occurring before November 25, 1997. The Court finds that Atlus's reliance on advice of counsel waives attorney-client privilege and

work product protection otherwise applicable to certain documents in this time period.

With respect to attorney-client privilege, fairness principles favor extending the waiver to permit SNK to discover privileged communications relevant to the issues raised by the advice of counsel defense. Documents relevant to this defense are discussed in the preceding section. The relevancy of documents in this period stem, in part, from the fact that the so-called "advice of counsel" relied upon by Atlus does not appear from the record to be self-contained within a single document. Rather, it seems ephemeral in nature and will likely constitute a series of written documents and oral communications occurring before and after the infringement suit was filed. It would therefore be inappropriate to attempt to dissect those communications with an artificial temporal limitation. At the very least, communications occurring after the filing of the lawsuit may shed light on the defendants' state of mind when Atlus Dream filed and maintained the patent suit. Further, communications occurring after the filing of the lawsuit may be highly probative of whether the Irell law firm had all of the material facts necessary to provide competent advice regarding the filing of the infringement claim against SNK. Therefore, documents that were relevant in Period I are still relevant in Period II. In addition, information about Atlus's maintenance and withdrawal of its infringement suit are directly relevant to its state of mind in maintaining the suit. It is significant that on February 17, 1998, less than two (2) months before it decided to dismiss the lawsuit, Atlus Dream filed a first amended complaint containing the same allegations at issue. Accordingly, the Court finds that the need for SNK, out of fairness to discover information so that it can test the advice of counsel defense raised by Atlus, outweighs the interest in upholding the privilege.

Applying principles of fairness and balancing the competing interests, the Court finds that Atlus's reliance on advice of counsel waives attorney-client privilege over all attorney-client communications occurring in this period relating to:

(1) validity or infringement of the '386 patent;

(2) licensing of the '386 patent as it relates to Atlus Dream's standing to sue under the '386 patent;

(3) Atlus Dream's decision of whether to maintain or withdraw its infringement suit against SNK or file the first amended complaint;

(4) the purpose for suing SNK for infringement of the '386 patent and how the infringement suit would achieve that purpose;

(5) the merits of a claim or potential claim filed by Atlus Dream against SNK for infringement of the '386 patent; and

(6) the litigation strategy for enforcing the '386 patent against SNK.

Atlus argues that it asserts the advice of counsel defense only to prove that it had probable cause for *filing* the infringement suit, and not *maintaining* it. SNK argues that Atlus cannot assert the advice of counsel defense to defend against only a part of SNK's malicious prosecution claim. The Court agrees with SNK. SNK's complaint alleges that defendants "lacked probable cause in bringing and prosecuting" the infringement suit against SNK. Second Amended Complaint, ¶ 61. Atlus cannot assert the advice of counsel defense to only the "bringing" part and not the "prosecuting" part. To permit such a selective assertion would allow Atlus to unfairly use the privilege as a shield and a sword. This the Court will not allow.

Waiver of work product immunity presents a more difficult call. The interest in protecting work product typically becomes enhanced after the filing of the lawsuit. Under the circumstances of this case, however, this interest, if anything, is diminished. The infringement suit for which the work product was generated was dismissed with prejudice, eliminating the usual concern of the opposing party discovering an attorney's trial preparations. Atlus overstates its concern that, because SNK must prove issues in the instant litigation that were similar to those in the infringement suit, SNK's discovery of Atlus's work product from the infringement suit frustrates the very purpose of the work product doctrine. The probative value of work product showing that the patent was invalid (and therefore that the Irell law firm and perhaps Atlus knew the patent was invalid) far outweighs any legitimate interest Atlus may have in protecting that work product. Indeed, the courts in *Dunhall* and *Electro Scientific* carefully considered the issue of whether waiver extends to uncommunicated work product and concluded that uncommunicated work product is likely to be probative of communications between attorney and client and was therefore discoverable. *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*, 994 F.Supp. 1202, 1204–05; *Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 544–47 (N.D.Cal.1997). The Court finds the reasoning in *Dunhall* and *Electro Scientific* to apply to the circumstances of this case. Accordingly, the Court finds that the balance of interests tips in favor of discovery.

For these reasons, the Court finds that fairness favors allowing SNK to discover work product of Atlus generated in this time period. Accordingly, the Court finds that Atlus's reliance on advice of counsel waives work product protection over all work product materials generated in this period relating to:

(1) validity or infringement of the '386 patent;

(2) licensing of the '386 patent as it relates to Atlus Dream's standing to sue under the '386 patent;

(3) Atlus Dream's decision of whether to maintain or withdraw its infringement suit against SNK or file the first amended complaint;

(4) the purpose for suing SNK for infringement of the '386 patent and how the infringement suit would achieve that purpose;

(5) the merits of a claim or potential claim filed by Atlus Dream against SNK for infringement of the '386 patent; and

(6) the litigation strategy for enforcing the '386 patent against SNK.

## C. Period III: After April 10, 1998

■ Atlus Dream notified SNK of its intention to withdraw its infringement claim on April 10, 1998. The case was not dismissed until June 1, 1998. The delay between Atlus Dream's notice to withdraw and the actual dismissal of the infringement case appear substantially to be a result of SNK's opposition to Atlus Dream's dismissal.

The Court finds that information in communications occurring, and work product generated, after April 10, 1998, to have minimal, if any, relevance to the issues raised by Atlus's advice of counsel defense or any claim in this case. Here, the policies and values underlying the preservation of the attorney-client privilege and work product doctrine outweigh any need for to allow SNK to discover privileged information in this period. The Court's balancing of these interests and application of fairness principles weigh in favor of upholding the privilege and work product protection and limiting waiver to exclude communications and work product materials in this period.

## V. ORDER

For the foregoing reasons, the Court finds that Atlus's limited waiver to be unduly narrow in light of its reliance on advice of counsel. Accordingly, the Court finds that the scope of the waiver to extend beyond Atlus's limitations as discussed above and orders the Irell law firm to produce the following [7]:

For Periods I and II, the Irell law firm shall produce attorney-client communications occurring, and work product materials generated, before (and including) April 10, 1998, that are responsive to the subpoena *duces tecum* and relate to the following:

(1) validity or infringement of the '386 patent;

(2) licensing of the '386 patent as it relates to Atlus Dream's standing to sue under the '386 patent;

(3) the purpose for suing SNK for infringement of the '386 patent and how the infringement suit would achieve that purpose;

(4) the merits of a claim or potential claim filed by Atlus Dream against SNK for infringement of the '386 patent; and

(5) the litigation strategy for enforcing the '386 patent against SNK.

For Period I, the Irell law firm shall produce attorney-client communications occurring, and work product materials generated, before (and including) November 25, 1997, that are responsive to the subpoena *duces tecum* and relate to the following:

(1) Atlus Dream's decision of whether and when to sue SNK for infringement of the '386 patent.

For Period II, the Irell law firm shall produce attorney-client communications occurring, and work product materials generated, from November 26, 1997 to (and including) April 10, 1998, that are responsive to the subpoena *duces tecum* and relate to the following:

(1) Atlus Dream's decision of whether to maintain or withdraw its infringement suit against SNK or file the first amended complaint.

IT IS SO ORDERED.

---

7. In illustrating some of its points, SNK refers in its papers to portions of deposition transcripts where Mr. Ginder was instructed not to answer questions on the grounds of attorney-client privilege and work product immunity. Because SNK has moved to compel the production of documents and nothing else, this order is limited to documents. The Court notes, however, that the same reasoning and principles would apply to the discovery of other information.