2003 OK 75

**William C. HEFFRON,**
**Plaintiff/Petitioner,**

v.

**THE DISTRICT COURT OF OKLA-HOMA COUNTY, The Honorable Noma D. Gurich, Respondent,**

Illinois Emcasco Insurance Company, Defendant/Real Party in Interest Respondent,

and

**Scott Dallas, Real Party in Interest Respondent.**

No. 98,881.

Supreme Court of Oklahoma.

Sept. 23, 2003.

As Corrected Oct. 13, 2003.

Jack S. Dawson and Stefan K. Doughty of Miller Dollarhide, Oklahoma City, Oklahoma for plaintiff/petitioner.

Mickey James and Marcie James of Green, James & Williams, Oklahoma City, Oklahoma for defendant/real party in interest respondent.

Kenneth W. Elliott and Devan A. Pederson of Elliott and Morris, Oklahoma City, Oklahoma for real party in interest respondent, Scott Dallas.

LAVENDER, J.

¶1 This cause presents a discovery dispute in a suit brought by plaintiff/petitioner, William C. Heffron against defendant/real party in interest respondent, Illinois Emcasco Insurance Company.[1] Although the suit-initiating trial court petition is not before us, it appears he sues to recover on an insurance policy (contract theory) and for bad faith denial of his insurance claim (tort theory) regarding a building owned by him after it was destroyed by fire.[2] He requests our assumption of original jurisdiction to, in effect, overturn two trial court orders. Taken together the orders rule that though he may depose three witnesses—the other real party in interest respondent, Scott Dallas, an Oklahoma City Fire Department (OKCFD) fire

---

1. Material(s) submitted in the appendices of plaintiff/petitioner, William C. Heffron and defendant/real party in interest, Illinois Emcasco Insurance Company, indicate there may be other defendants in the trial court. Although the materials presented are not conclusive, it appears one or more of them may be related in some way to Emcasco and represented by the same counsel. The presence of other defendants in the trial court does not impact our disposition.

2. Nothing in this opinion expresses a view on the merits of any theory or theories of recovery sued upon by Mr. Heffron or defenses raised by Emcasco in the trial court. The parties seem to agree Mr. Heffron sues in both contract and tort. Also, we do not know if the fire totally destroyed or merely damaged the involved building. The word destroyed is used by Mr. Heffron in his application to assume original jurisdiction, etc. and by Emcasco in its response to his application, etc., filed herein on February 19 and March 11, 2003 respectively.

investigator[3]; a Mike Lee, an outside claims adjuster; and a Gordon Bulla, an outside private investigator, the latter two hired by Emcasco to assist it in adjusting and investigating the fire loss claim—he **must** pay the OKCFD fire investigator $3,000.00 as an un-retained expert witness fee, and the latter two, respectively, $55.00 and 60.00 per hour[4], the rate Emcasco was apparently charged for their assistance in adjusting and investigating the claim. Mr. Heffron argues he should have to pay only the $10.00 per day ordinary witness fee provided in 28 O.S.Supp.2002, § 81(A)(3). He seeks relief via prohibition and/or mandamus.[5]

¶2 We assume original jurisdiction. Though the materials presented in this matter are insufficient for us to direct the trial judge in her ruling as to the claims adjuster and private investigator, the submissions show the trial court order as to them manifests an unauthorized use of judicial force. As to the OKCFD fire investigator, the materials presented also show an unauthorized use of judicial force. Thus, the trial judge is prohibited from proceeding under or enforcing her orders denying Mr. Heffron's motion to compel and supplement thereto. The trial court is instructed to reconsider the issue of fees for the claims adjuster and private investigator under the standards enunciated herein under the applicable statutes, § 81(A)(3) and 12 O.S.Supp.2002, § 3226(B)(3)(a)(2)(claims adjuster, Mr. Lee) or § 3226(B)(3)(b)(private investigator, Mr. Bulla), and § 3226(B)(3)(c)(1).[6] As to the OKCFD fire investigator (Mr. Dallas), the trial court is directed to allow his deposition to be taken for the ordinary $10.00 per day witness fee to the extent Mr. Heffron seeks to inquire of him into matters concerning the specific events and occurrences involved with his investigation of the fire in his capacity as an OKCFD fire investigator; as to his expert opinion as to the cause and origin of the fire and the rationale behind the opinion; and as to what information, if any, he may have imparted to Emcasco (or its agents) concerning the investigation prior to denial of Mr. Heffron's insurance claim.

## PART I. ASSUMPTION OF ORIGINAL JURISDICTION.

■ ¶3 Original jurisdiction may be assumed and the extraordinary relief of a writ of mandamus or prohibition is available under proper circumstances to order or prohibit the production of evidence prior to trial. *Inhofe v. Wiseman*, 1989 OK 41, 772 P.2d 389, 391; *Ellison v. Gray*, 1985 OK 35, 702 P.2d 360, 362–363. "However, before appropriate relief may be granted, it must be shown that the trial court exceeded its authority or discretion in ordering or denying pretrial discovery." *Ellison*, 702 P.2d at 363. In other words, such extraordinary relief is available to prevent or remedy the unauthorized use of judicial force when the trial court has attempted to exercise judicial power or authority not authorized by, and contrary, to law. *See Alva State Bank and Trust Co. v. Dayton*, 1988 OK 44, 755 P.2d 635, 635–636. Accordingly, we will entertain original jurisdiction to control a trial court's handling of pretrial discovery matters only in **rare** cases. Although this is such a case, we make clear (as we did in *Christian v. Gray*, 2003 OK 10, ¶3, 65 P.3d 591, 596, concerning trial court rulings on motions *in limine* ) that we will **not** serve as a pretrial reviewing panel for trial court orders adjudicating discovery matters.

¶4 We assume original jurisdiction here, however, because the questions involved are

---

3. Real party in interest, Scott Dallas, is not a party to the underlying lawsuit brought by Mr. Heffron; nor are Mike Lee or Gordon Bulla. Materials presented in this matter appear to show that Mr. Dallas is a Major with the Oklahoma City Fire Department (OKCFD).

4. Mr. Bulla, the outside private investigator hired by Emcasco, requested $480.00 for a full day deposition and additional half days at $240.00. Also, as we view the submissions before us, Mr. Dallas initially sought $2,000.00, but some time later increased the figure to $3,000.00

5. The two trial court orders (filed on February 6, 2003) are each labeled "Journal Entry"; one pertains to Mr. Dallas, the other to Mr. Lee and Mr. Bulla.

6. Title 12 O.S.Supp.1982, § 3203 was renumbered as § 3226 in 1989 as part of a renumbering of the Oklahoma Discovery Code. 1989 Okla.Sess. Laws, Ch.129, § 14.

primarily ones of first impression for this Court and the record shows an unauthorized use of judicial force by the trial court in its rulings regarding the depositions of the three witnesses and their fee entitlement. Though Court of Civil Appeals' decisions exist concerning issues relating to expert witness fees involving depositions of experts and this Court, on one or more occasions, has issued opinions touching the edges of such a dispute, the precise controversy has not been definitively addressed by us.[7] In our view, this opinion will promote the interest of judicial economy and act as a clarifying vehicle for courts statewide on the treatment of expert witnesses who are sought to be deposed in a situation where one or more of the parties to a lawsuit and the witness disagree on whether the deponent should receive **more compensation** than the $10.00 per day ordinary statutory [§ 81(A)(3)] witness fee under 1) 12 O.S.Supp.2002, § 2004.1(C)(3)(b)(2)(unretained expert) or 2) § 3226(B)(3)(a)(2) or § 3226(B)(3)(b), and § 3226(B)(3)(c)(1)[concerning discovery of facts known and opinions held by an expert a) the other party expects to call as a witness, the facts or opinions acquired or developed in anticipation of litigation or for trial, or b) who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial].

## PART II. FACTS, BACKGROUND AND REVIEW STANDARD.[8]

¶ 5 A fire occurred in April 1999, destroying a duplex located in Oklahoma City owned by Mr. Heffron. Mr. Dallas investigated the blaze in furtherance of the performance of his duties with the OKCFD. Mr. Heffron was charged criminally regarding the fire and at the time this matter was presented to us, the criminal case was pending. A preliminary hearing in the criminal case has been held, at which Mr. Dallas testified.[9]

¶ 6 Mr. Heffron had a policy of insurance with Emcasco covering the building and he submitted a claim to recover on it. Emcasco investigated the claim and denied it in January 2000. In essence, according to Emcasco's response to the application to assume original jurisdiction, one reason the claim was denied was its conclusion the fire was caused intentionally by or at Mr. Heffron's direction, i.e., arson.[10]

¶ 7 Mr. Dallas, in addition to being employed by the OKCFD, works for Dallas & Associates Fire & Explosion Consultants, Inc., apparently a private company specializing in fire cause and origin analysis, fire reconstruction, and other fire-related expert services. Mr. Dallas asserts he makes his living based on his expertise in this highly technical field. Both Mr. Heffron and Emcasco have listed Mr. Dallas as a trial witness in the Pretrial Conference Order (PTO) filed in the trial court. Mr. Heffron indicates in the PTO Mr. Dallas will testify to the facts and circumstances relating to investigation of the fire; Emcasco that he will testify to the fire's cause and origin investigation.

¶ 8 Neither Mr. Heffron nor Emcasco have retained Mr. Dallas to act as an expert as to any aspect of the underlying lawsuit.

---

**7.** *See e.g. Dulan v. Johnston,* 1984 OK 44, 687 P.2d 1045; *Fuller v. Pacheco,* 2001 OK CIV APP 39, 21 P.3d 74; *Atchley v. Hewes,* 1998 OK CIV APP 143, 965 P.2d 1012; *McCoy v. Black,* 1997 OK CIV APP 78, 949 P.2d 689; *Drake v. Wal-Mart, Inc.,* 1994 OK CIV APP 47, 876 P.2d 738.

**8.** Recited are factual matters deemed necessary for proper disposition and understanding of this original action and the discovery dispute. The facts recited are taken from submissions of Mr. Dallas, Mr. Heffron and Emcasco, which include appendices filed in this Court by the latter two. Our factual recitation is not to be taken as definitively determining any fact dispute that may subsequently be presented by any party as to the merits of the underlying lawsuit.

**9.** Nothing herein should be taken to comment on whether materials or information associated with the criminal investigation/ongoing criminal case against Mr. Heffron are discoverable in this civil lawsuit. No such question is raised here.

**10.** Emcasco's response to the application to assume original jurisdiction also indicates Mr. Heffron's claim to recover under the insurance was denied because: 1) fraud and false swearing were committed by him in pursuit of the claim; 2) there was an increase of hazard on the premises; 3) the property was unoccupied as defined by the insurance contract; and 4) Mr. Heffron failed to cooperate fully in the claim's investigation.

As noted above, he investigated the fire in the performance of his job duties with the OKCFD. Further, nothing in the materials presented to us indicates or shows Mr. Dallas investigated the fire for Dallas & Associates Fire & Explosion Consultants, Inc. The trial court order that denied Mr. Heffron's motion to compel Mr. Dallas' deposition for the ordinary witness fee also ruled he was entitled to $3,000.00 from Mr. Heffron for the taking of the deposition. The trial judge determined he is so entitled as an unretained expert witness fee. Further, as to Mr. Dallas, the order, as we read it, expressly acknowledges that Mr. Heffron is only interested in obtaining facts from him concerning what he did in relation to investigation of the fire in the performance of his duties with the OKCFD, rather than obtaining his expert opinion on the cause thereof. We note that Mr. Heffron presumably knows his opinion on the fire's cause as Mr. Dallas testified at Mr. Heffron's criminal preliminary hearing. Finally, Mr. Dallas himself seems to admit in his trial court response to Mr. Heffron's motion to compel that Mr. Heffron may depose him as to matters concerning what he did in regard to his fire investigation at the scene, i.e., what he smelled, sensed, or observed, etc., without paying him an expert witness fee.

¶ 9 Materials presented to us also show Emcasco hired Mr. Lee and Mr. Bulla to assist it in adjusting and investigating Mr. Heffron's claim for insurance benefits, i.e., prior to denial of the claim. In fact, as we read its submissions here and in the trial court, Emcasco so admits. Nothing before us shows, and Emcasco does not argue, that either Mr. Lee or Mr. Bulla were hired by it in anticipation of litigation or in preparation for trial. The trial court order entered as to them that denied Mr. Heffron's quest to take their depositions for the $10.00 per day ordinary statutory witness fee does not find or conclude either was hired by Emcasco in anticipation of litigation or trial preparation or that any facts known or opinions held by them were acquired or developed in anticipation of litigation or for trial; nor does the trial court order cite § 3226 as a basis for

ruling either are entitled to more compensation than that provided in § 81(A)(3).

¶ 10 The trial court's rationale as to Messrs. Lee and Bulla on the compensation issue appears contained in three numbered paragraphs of its order, where the trial judge's findings are delineated. The three paragraphs, *in toto*, follow:

1. Mike Lee and Gordon Bulla are, and were at all times relevant and material, adjusters and/or investigators hired by [Emcasco] to adjust and investigate [Mr. Heffron's] claim for recovery for a fire loss under a policy of insurance issued to him by [Emcasco].

2. [Emcasco's] counsel represented to the Court that the fees being requested in exchange for production of Mr. Lee and Mr. Bulla for deposition are the same fees said individuals charged [Emcasco] for their time for services rendered adjusting and investigating the relevant insurance claim made by [Mr. Heffron].

2(sic). The witnesses, Mike Lee and Gordon Bulla, are entitled to be compensated for their time involved in giving discovery depositions in this case and should be compensated by the party requesting to take their depositions.

¶ 11 Mr. Lee is expected to be called at trial by Emcasco, but Mr. Bulla is not. Mr. Heffron has listed the latter as a witness in the PTO. Emcasco indicates in the PTO that Mr. Lee will testify at trial concerning the investigation of events and circumstances surrounding the fire and adjustment of the claim. In the PTO Mr. Heffron states that Mr. Bulla will testify concerning the facts and circumstances relating to investigation of the claim.[11] Furthermore, Emcasco admits in its response to Mr. Heffron's application to assume original jurisdiction that Mr. "Heffron has been furnished with all of Mr. Bulla's reports prior to the date suit was filed[.]" Response of Illinois Emcasco Insurance Company, etc., pg. 6, filed March 11, 2003. We assume said reports were furnished to Mr. Heffron by Emcasco. The materials

---

11. We must assume Mr. Heffron will attempt to present Mr. Bulla (if Heffron actually calls him at trial) as a hostile/adverse witness. Materials pre-sented to us do not intimate that Mr. Heffron seeks to present Mr. Bulla as his own expert witness on any issue involved in the case.

presented to us do not conclusively show, one way or the other, whether Emcasco has similarly furnished to Mr. Heffron reports generated by Mr. Lee.

¶ 12 We deal with Messrs. Lee and Bulla first because whether they are entitled to expert witness compensation from Mr. Heffron for his taking of their depositions—rather than the § 81(A)(3) ordinary witness fee—is controlled by portions of § 3226. Then we turn to Mr. Dallas, as his entitlement to expert witness compensation—as opposed to the ordinary witness fee—is governed by § 2004.1(C)(3)(b)(2). We assume for purposes of our decision that Messrs. Lee, Bulla and Dallas are experts in their respective fields (i.e., fire investigation, claims adjustment and private investigation, the latter two relating to cause and origin fire investigation) by knowledge, skill, experience, training and/or education.[12]

 ¶ 13 Further, we note that § 3226 is part of our statutory discovery code, Oklahoma Discovery Code, 12 O.S.2001, § 3224 et seq., as amended. When such a statute is obtained from the Federal Rules of Civil Procedure (Fed.R.Civ.P.) we may look to relevant federal case law to assist us in interpreting the pertinent State provision. *Hall v. Goodwin*, 1989 OK 88, 775 P.2d 291, 293. Here, we may consider relevant federal case law interpreting Fed.R.Civ.P. 26 to assist us in interpretation of pertinent subsections of § 3226, as the subsections at issue were taken from their Rule 26 federal counterparts. *McCoy v. Black*, 1997 OK CIV APP 78, ¶ 6, 949 P.2d 689, 692.

¶ 14 Similarly, § 2004.1(C)(3)(b)(2)(unretained expert)(part of the Oklahoma Pleading Code, 12 O.S.2001, § 2001 et seq., as amended) was taken from Fed.R.Civ.P. 45(c)(3)(B) and we may examine federal court decisions interpreting the latter for guidance as to the meaning and effect of our corresponding pro-

vision. *Young v. Macy*, 2001 OK 4, ¶ 13 and n. 8, 21 P.3d 44, 47 and n. 8. Also, we may, of course, look for guidance in any pertinent federal Advisory Committee Notes or Oklahoma Comments accompanying the involved Rules or statutes.

 ¶ 15 Furthermore, in that the boundaries of the trial court's authority concerning a deponent's entitlement to either the ordinary per day witness fee or, instead, an expert witness fee are statutorily delineated and, thus, involve a legal question concerning statutory interpretation, our review is *de novo*. A legal question involving statutory interpretation is subject to *de novo* review [*Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5], i.e., a non-deferential, plenary and independent review of the trial court's legal ruling. *Id.*

## PART III. ANALYSIS—MR. LEE AND MR. BULLA.

¶ 16 Section 81(A)(3) provides:

A. Whenever, under the laws of this state, a person may be compelled by order, subpoena, or other lawful compulsion to appear as a witness, whether or not testimony or other evidence is actually adduced, the witness shall receive the following:

\* \* \*

3. For a witness who appears from this state pursuant to an order, subpoena, or other lawful means for compelling the appearance of the witness, Ten Dollars ($10.00) for each day of attendance, plus reimbursement as prescribed by law for travel expenses at rates not to exceed those prescribed by law for reimbursement for state employees.[13]

Subsections 3226(B)(3)(a)(2), 3226(B)(3)(b) and 3226(B)(3)(c)(1), those potentially perti-

---

**12.** Nothing presented to us conclusively shows the expertise of the three individuals in their respective fields, e.g., no curriculum vitae is in the materials submitted to us showing their education, experience, training, etc. in their respective fields. Nor has anything definitive been presented sufficient to show that Mr. Lee is competent to offer an expert opinion on the question of whether any investigation conducted by Em-

casco, or on its behalf, prior to denial of Mr. Heffron's claim, would qualify as a reasonable investigation so as to support a defense by Emcasco to Mr. Heffron's bad faith tort theory sued upon.

**13.** No issue concerning reimbursement for travel expenses is raised here.

nent to Mr. Lee (outside claims adjuster) and Mr. Bulla (outside private investigator), provide in relevant part:

### 3. TRIAL PREPARATION: EXPERTS.

a. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of paragraph 1 of this subsection **and acquired or developed in anticipation of litigation or for trial,** may be obtained only as follows:

* * *

(2) After disclosure of the names and addresses of the expert witnesses, **the other party expects to call as witnesses,** the party, who has requested disclosure, may depose any such expert witnesses subject to scope of this section. Prior to taking the deposition the party must give notice as required in subsections A and C of Section 3230 of this title. If any documents are provided to such disclosed expert witnesses, the documents shall not be protected from disclosure by privilege or work product protection and they may be obtained through discovery.

* * *

b. A party may discover facts known or opinions held by an expert **who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial,** only upon motion ... **upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by any other means.**

c. Unless manifest injustice would result:

(1) **The court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in respond-**ing to discovery under division (2) of subparagraph a of this paragraph and subparagraph b of this paragraph.[14] (Emphasis added.)

¶17 The central question in a "bad faith" failure to settle/denial of insurance tort suit (i.e., insurance company alleged to have breached its duty of good faith to deal fairly with its insured) is: what did the insurance company know or what should it have known at the time the insured requested payment under the applicable policy, i.e., whether the insurer had a justifiable, reasonable basis to withhold payment when the insured requested the carrier to perform its contractual obligation? *See Conti v. Republic Underwriters Ins. Co.,* 1989 OK 128, 782 P.2d 1357, 1362; *Buzzard v. McDanel,* 1987 OK 28, 736 P.2d 157, 159; *see Hall v. Globe Life and Acc. Ins. Co.,* 1998 OK CIV APP 161, ¶4, 968 P.2d 1263, 1265. The reasonableness of any investigation conducted by the insurer is, thus, oftentimes one of the main issues in the bad faith tort case. *Hall v. Globe Life and Acc. Ins. Co.,* 1998 OK CIV APP 161, at ¶¶4–8, 968 P.2d at 1265–1266. Also, expert testimony on the adequacy or inadequacy of the carrier's pre-denial investigation may be relied on by both sides to support their respective positions in the case. *See id.,* 1998 OK CIV APP 161, at ¶¶7–8, 968 P.2d at 1266. As to the contract theory to recover under the insurance policy, obviously, a prime issue would be whether or not the fire was incendiary in nature, i.e., deliberately set by or at Mr. Heffron's direction, and expert opinion testimony as to the fire's cause will probably be sought to be introduced by the opposing parties. *See McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.,* 1992 OK 43, 841 P.2d 568, 569.[15]

¶18 Emcasco frames the issue as to all three witnesses in a narrow, and as we will

**14.** Title 12 O.S.Supp.2002, § 3226(B)(3)(c)(2) provides:

The court shall require that the party seeking discovery with respect to discovery obtained under subparagraph b of this paragraph, pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

Emcasco has not argued here that Mr. Heffron should be required to pay it a reasonable portion of the fees and expenses incurred by it in obtaining any facts or opinions from Mr. Bulla. We, thus, need not consider § 3226(B)(3)(c)(2).

**15.** Although the involved insurance policy is not before us, we must assume recovery under it would not be allowed by its terms if the fire was either set by Mr. Heffron or at his direction.

explain, incorrect manner. It states: "[t]he issue before this [C]ourt is to determine whether the three witnesses named are expert witnesses as defined by statute." Response of Illinois Emcasco Insurance Company, etc., pg. 7, filed March 11, 2003. It then argues all three are experts under 12 O.S. 2001, § 2702 and, therefore, expert witness fees for their depositions must be paid.[16] Emcasco misperceives what is actually necessary for entitlement to expert witness compensation under the pertinent subsections of § 3226, as apparently did the trial judge. Expert status in a certain field is not alone sufficient. As noted above, we assume Mr. Lee and Mr. Bulla (as well as Mr. Dallas) are experts; however, that does not end the inquiry, but merely begins the process which will lead to proper resolution of whether the witnesses are entitled to more compensation than that provided in § 81(A)(3).

¶ 19 As seen by review of § 3226(B)(3)(a)(2), § 3226(B)(3)(b) and § 3226(B)(3)(c)(1), particularly the bolded portions emphasized above, the preeminent trigger for entitlement to payment of a reasonable expert fee for individuals such as Mr. Lee and Mr. Bulla is 1) that the facts known and opinions held by the expert be "acquired or developed in anticipation of litigation or for trial", in the case of an expert witness expected to be called at trial by the other party (i.e., Mr. Lee) or 2) in the case of an expert not expected to be called at trial (i.e., Mr. Bulla) that said expert must be "retained or specially employed by another party in anticipation of litigation or preparation for trial." The initial burden to show the anticipation of litigation or trial preparation trigger is plainly on the party who is claiming the witness is entitled to an expert witness fee, here Emcasco. As noted above, Emcas-

co does not even argue it hired Mr. Lee and Mr. Bulla in anticipation of litigation or for trial or that their opinions were formed, acquired or developed for the litigation, in anticipation thereof or for trial. Instead, the facts and opinions known and held by them seem to have been uncovered and formed, at least initially, prior to denial of the claim while they were assisting Emcasco in adjusting and investigating the claim in the ordinary course of business.[17]

¶ 20 Although we have not previously directly dealt with what is meant by anticipation of litigation or for trial in the context of whether an expert is entitled to reasonable compensation for the taking of his deposition over that provided by the ordinary witness fee statute, we have considered the anticipation of litigation concept within the confines of a suit against an insurance company in the somewhat analogous situation of an insurer invoking work product privilege to protect documentary materials from discovery by the insured under other portions of § 3226. In *Hall v. Goodwin, supra,* this Court held an insurer was required to produce a factual witness statement taken by its attorney during investigation of a fire loss claim prior to the insurer's denial of the claim, the statement of the witness essentially being that the insured had hired people to burn his house. *Hall v. Goodwin,* 775 P.2d at 291–292. In so doing, this Court decided that the crucial inquiry as to whether a document was protected by a qualified work product privilege was whether the document was secured by the insurer (or its employee) in anticipation of litigation, or merely in the ordinary or regular course of business. *Id.,* 775 P.2d at 295.[18]

---

16. Title 12 O.S.2001, § 2702 provides: "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise."

17. In 1993 the language of Fed.R.Civ.P. 26 was changed as pertains to experts anticipated to be called at trial, arguably doing away with the requirement that the facts known or opinions held by such experts be acquired or developed in

anticipation of litigation or for trial. *Grant v. Otis Elevator Company,* 199 F.R.D. 673, 675–676 (N.D.Okla.2001). However, Oklahoma has retained the acquired or developed in anticipation of litigation or for trial language of the pre–1993 federal rule for experts expected to be called at trial.

18. *Hall v. Goodwin,* 1989 OK 88, 775 P.2d 291 dealt with interpretation of 12 O.S.Supp.1988, § 3203, the pre-renumbered version of § 3226.

¶ 21 *Hall v. Goodwin* also appeared to recognize, in that a central part of the business of insurance companies is to investigate claims, review them and decide whether or not to pay, documents prepared in the ordinary course of business by the insurer, its employees and agents in regard to such endeavors cannot automatically be deemed to have been generated in anticipation of litigation merely because litigation may be deemed a contingency. *Id.,* 775 P.2d at 294–295. For the anticipation of litigation threshold to be met, the primary motivating purpose behind creation of a document or investigative report must be in aid of possible future litigation, although litigation need not be imminent at the time of the document's creation. *Hall v. Goodwin,* 775 P.2d at 294, quoting *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982). Further, whether an insurance company's investigatory documents were prepared in anticipation of litigation turns on the facts of each particular case. *Carver v. Allstate Insurance Co.,* 94 F.R.D. 131, 134 (S.D.Ga. 1982); *see also Chambers v. Allstate Insurance Co.,* 206 F.R.D. 579 (S.D.W.Va.2002); *Wikel v. Wal–Mart Stores, Inc.,* 197 F.R.D. 493 (N.D.Okla.2000). In other words, the point is not fixed, but may vary depending on the nature of the claim and the type of investigation conducted. *Carver v. Allstate Insurance Co., supra,* 94 F.R.D. at 134.

¶ 22 As noted, the trial judge's order makes no finding that Mr. Bulla was hired or specially retained by Emcasco in anticipation of litigation or for trial preparation, or that the facts known or opinions held by either he or Mr. Lee were acquired or developed in anticipation of litigation or for trial, the overriding preliminary determinations calling into play entitlement to more compensation than that provided in the ordinary witness fee statute, § 81(A)(3).[19] In fact, the trial judge's order expressly recognizes the same thing admitted by Emcasco, that Mr. Lee and Mr. Bulla were hired by Emcasco to assist it in adjustment and investigation of Mr. Heffron's claim for recovery of fire loss under the applicable insurance policy. In that the trial judge's order, on its face, shows an unauthorized use of judicial force in that it exhibits a failure to even consider the preeminent issues as to their entitlement to expert witness compensation, a writ prohibiting the order's enforcement is required.

¶ 23 The Advisory Committee Notes to the 1970 amendment to Fed.R.Civ.P. 26 (the provision from which our § 3226 as pertinent here was taken) show that the mere fact an individual is an expert is not alone sufficient to bring into play the reasonable expert fee provision, as opposed to treating the individual as a witness entitled only to the statutory ordinary witness fee. The Advisory Committee Notes state in relevant part:

> Subdivision (b)(4)Trial Preparation: Experts. This is a new provision dealing with discovery of information (including facts and opinions) obtained by a party from an expert retained by that party in relation to litigation or obtained by the expert and not yet transmitted to the party. The subdivision deals separately with those experts whom the party expects to call as trial witnesses and with those experts who have been retained or specially employed by the party but who are not expected to be witnesses. **It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.** (Emphasis added.)

28 U.S.C., Fed. R. Civ. P. 26, app. (1970).

¶ 24 The primary purpose behind the subsections of § 3226 before us is to prevent a party from building his case with

---

19. Of course, as to Mr. Bulla, if Emcasco had actually shown below that he was retained or specially employed in anticipation of litigation or for trial preparation (which it did not based on the materials presented to us), the burden would have then shifted to Mr. Heffron, for allowance of discovery purposes, to show exceptional circumstances under which it would be impracticable for Mr. Heffron to obtain the facts known or opinions held by Mr. Bulla on the same subject by other means. § 3226(B)(3)(b).

opinions from experts his opponent engages for assistance and guidance in preparing for the merits of the litigation. *In re Brown Company Securities Litigation,* 54 F.R.D. 384, 385 (E.D.La.1972). The provisions guard against the discovering party unduly benefitting from his adversary's efforts to obtain expert testimony. *Nelco Corporation v. Slater Electric Inc.,* 80 F.R.D. 411, 415–416 (E.D.N.Y.1978). The purpose, then, is to foster fairness between the parties to the litigation in regard to expert witnesses. *See* Maurer, *Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure,* 19 Ga.L.Rev. 71, 115 (1984). Of course, in regard to an expert that will be called at trial, it also insures that, if a party seeks to depose his opponent's expert in order to better prepare for cross-examination at trial, the discovering party pay the expert's charges for submitting to the examination. 8 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FED. PRAC. & PROC. CIV.2d, § 2034 (Supp.2003).

¶ 25 There may be many and varied situations where a person is an expert, yet the information sought to be discovered from him or her falls outside the confines of facts known or opinions held which were acquired or developed in anticipation of litigation or for trial. *See e.g. Nelco Corporation v. Slater Electric Inc., supra* (inventor in patent infringement suit); *In re Brown Securities Litigation, supra* (opinion formed not in anticipation of litigation but as part of proxy solicitation regarding merger—securities litigation involved).

■■■■■ ¶ 26 We realize there may be situations where an expert initially hired by an insurance company merely to assist in adjusting and/or investigating an insured's claim for recovery under the insurance policy—and, thus, the individual would only be considered an actor or viewer to relevant transactions or events involved in the underlying litigation for bad faith denial of the insurance claim or for contractual recovery under the policy—at some point in time could be transformed, for deposition fee purposes, from an ordinary witness into one that has acquired facts or developed opinions, or been retained or specially employed, in anticipation of litigation or trial preparation, and, therefore, entitled to reasonable expert compensation. As the Court of Civil Appeals correctly recognized in *McCoy v. Black, supra,* there may be situations where a witness sought to be deposed may be considered an expert as to some matters and, thus, entitled to a reasonable fee above the ordinary witness fee, while as to other matters he will properly be considered only an actor or viewer not so entitled. *McCoy v. Black,* 1997 OK CIV App 78, at ¶¶ 9–10, 949 P.2d at 693–694. As with the question of—for work product privilege analysis—whether insurance company documents were prepared in anticipation of litigation or for trial or, instead, in the ordinary course of business, the question of—for deposition fee purposes—whether an expert should be considered an actor or viewer to events or transactions relevant to the underlying lawsuit, only entitled to the ordinary witness fee, or rather, an expert who has acquired or developed facts or opinions in anticipation of litigation or for trial or has been retained or specially employed in anticipation of litigation or for trial preparation, turns on a particularized examination of the facts of each case, i.e., a case-by-case diagnosis.

¶ 27 Nothing in the materials presented to us shows that the trial court conducted such an analysis prior to making the determination Mr. Lee and Mr. Bulla were entitled to more compensation than that provided in § 81(A)(3). It seems the trial court merely determined they were experts and should be paid something in addition to the ordinary witness fee. This is so notwithstanding the fact they appear to be actors or viewers as pertains to one or more of the primary issues in the underlying suit, e.g., what did Emcasco know or what should it have known at the time Mr. Heffron requested payment under the applicable policy, as such knowledge bears on gauging the reasonableness of any investigation conducted by Emcasco leading up to denial of the fire loss claim.

¶ 28 In the final analysis, the trial judge failed to properly apply the relevant statutes, seemingly relying only on a determination Mr. Lee and Mr. Bulla were experts in their

respective fields. That alone does not entitle them to fees over and above the ordinary witness fee of $10.00. When the matter returns to the trial court, attention must be given as to whether one or the other of these individuals should be considered actors or viewers to transactions or events relevant to issue(s) involved in the underlying lawsuit, and whether at some point in time their role(s) were transformed from actors or viewers to experts falling within the ambit of § 3226(B)(3)(a)(2) or § 3226(B)(3)(b), and § 3226(B)(3)(c)(1). Until such an analysis is conducted, a final reasoned decision on the fee issue, as it relates to Mr. Lee and Mr. Bulla, cannot be made. We now turn to Mr. Dallas.

### PART IV. ANALYSIS—MR. DALLAS.

¶ 29 The question involving Mr. Dallas is controlled by § 2004.1(C)(3)(b)(2), rather than § 3226, because he was not and has not been retained by either party in anticipation of litigation or for trial preparation. Section 2004.1(C)(3)(b)(2), the statute relating to an unretained expert, provides in pertinent part:

> If a subpoena ... requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena. However, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

The Oklahoma Comment to the 1993 Revision of § 2004.1 [found in OKLA.STAT.ANN. tit. 12, § 2004.1 (2003 pocket part, Thomson/West) ] provides in regard to such an individual as follows:

> The court is also authorized to impose appropriate conditions on a subpoena that seeks disclosure of ... opinions from an unretained expert who is not a fact witness. For example, a court may determine that a physician who has not been retained as an expert by any party nor has any personal knowledge of the facts of the case should not be compelled to respond to a subpoena without assurance of reasonable compensation and an explanation why the opinion could not be obtained from another physician who was voluntarily retained. *See* Advisory Committee Notes to 1991 Amendments to Fed.R.Civ.P. 45(c)(3)(B).

The prime reason for the rule is to protect the intellectual property of the unretained expert and does not apply to an expert retained by a party. The Advisory Committee Notes to the 1991 Amendments to Fed. R.Civ.P. 45(c)(3)(B), provide in pertinent part:

> Clause (c)(3)(B)(ii) provides appropriate protection for the intellectual property of the non-party witness; it does not apply to the expert retained by a party, whose information is subject to the provisions of Rule 26(b)(4). A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts. Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, e.g., *Carter–Wallace, Inc. v. Otte*, 474 F.2d 529 (2d Cir.1972), but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. See generally Maurer, *Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure*, 19 GA.L.REV. 71 (1984); Note, *Discovery and Testimony of Unretained Experts*, 1987 DUKE L.J. 140. Arguably the compulsion to testify can be regarded as a "taking" of intellectual property. The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash as provided in the final sentence of subparagraph (c)(3)(B); that requirement is the same as that necessary to secure work product under Rule 26(b)(3) and gives assurance of reasonable compensation. The Rule thus approves the ac-

commodation of competing interests exemplified in *United States v. Columbia Broadcasting System Inc.*, 666 F.2d 364 (9th Cir.1982). See also *Wright v. Jeep Corporation*, 547 F.Supp. 871 (E.D.Mich. 1982).

As stated in *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir.1976), the district court's discretion in these matters should be informed by "the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having continually to testify...."

28 U.S.C., Fed.R.Civ.P. 45, app. (1988 Ed., Supp. III 1991).

■ ¶ 30 Rather than being concerned with fairness between the litigants to the underlying litigation, § 2004.1(C)(3)(b)(2), as plainly set out in the above-quoted Advisory Committee Notes, has as its purpose fairness to or protection of the unretained, non-occurrence expert, i.e., it seeks to protect the intellectual property of said expert. The tri-

al judge's order in regard to Mr. Dallas seems to acknowledge that Mr. Heffron is only interested in obtaining facts from him concerning what he did in relation to investigation of the fire, rather than obtaining his expert opinion on the cause of the fire. Mr. Heffron presumably already knows the OKCFD fire investigator's opinion for, as noted above, Mr. Dallas testified at Mr. Heffron's criminal preliminary hearing.[20] Also, Mr. Dallas himself seems to admit in his trial court response to Mr. Heffron's motion to compel that Mr. Heffron may depose him as to matters concerning what he did in regard to his fire investigation at the scene, i.e., what he smelled, sensed, observed, etc., without paying him an expert witness fee. The trial judge acknowledged that only facts were sought—which presumably are relevant to issue(s) in the lawsuit—but ordered the deposition could be taken only on payment of a $3,000.00 fee to Mr. Dallas.[21]

¶ 31 Further, we must note that nothing in the materials before us indicates that Mr. Dallas conducted any part of his investigation as an employee of Dallas & Associates Fire & Explosion Consultants, Inc., the private company specializing in fire cause and origin analysis, fire reconstruction, and other fire-related expert services. Instead, the materials presented to us rather plainly indicate that Mr. Dallas' investigation of the involved

---

**20.** In regard to Mr. Dallas, if it is assumed he would properly be categorized as an unretained expert under 12 O.S.Supp.2002, § 2004.1(C)(3)(b)(2), the record seems quite plain that Mr. Heffron did not attempt to show there was a substantial need for his testimony as required under the statute, nor did the trial court concern itself with such an issue. As we read the provision, a trial court need not even reach the fee issue if the person sought to be deposed is actually an unretained expert, rather than a fact witness, unless a plaintiff shows a substantial need for the testimony.

**21.** A statute exists concerning expert witness fees, the State Fire Marshal or an employee of the Office of State Fire Marshal. Title 28 O.S. 2001, § 91 provides:

In civil cases in which the state is not a party, if the State Fire Marshal or an employee of the Office of State Fire Marshal is subpoenaed as a witness to testify on any matter pertaining to a fire investigation conducted by

the Office of State Fire Marshal, the party causing the subpoena to be issued shall pay an expert witness fee to be set by the State Fire Marshal. Said fee shall be paid to the court clerk before the witness is required to testify. The court clerk shall remit the fee to the State Treasurer to be deposited to the General Revenue Fund of the state.

Notice of receipt of the required fee shall be transmitted by the court clerk to the State Fire Marshal or employee who has been subpoenaed. If the expert witness fee is not received before the witness is required to testify, the witness shall not be compelled to obey the subpoena.

If the expert witness fee is paid and, for any reason, the witness fails to obey the subpoena, said fee shall be returned to the party causing the subpoena to be issued.

Neither Mr. Dallas nor Mr. Heffron (nor Emcasco) have cited to us any similar provision concerning city fire department employees; nor have we found a similar statute that would apply to a fire investigator with the OKCFD.

fire was conducted in the public interest as part of his regular job duties with the OKCFD. We, thus, fail to see how allowing his deposition as to what he did in regard to investigation of the fire or what his expert opinion is as to its cause or origin, would impact in any significant way his intellectual property as an expert in the field of fire investigation. Very simply, Mr. Dallas has no proprietary interest in the investigation of the particular fire involved in the instant litigation in his capacity as a fire investigator with the OKCFD or in the expert opinion formed by him as to the cause and origin of said fire in that same capacity.

¶ 32 As we view the matter, because the underlying nature of the suit involves litigation to recover on an insurance policy and Emcasco's alleged bad faith in handling Mr. Heffron's claim, Mr. Dallas' role in investigating the cause of the conflagration in his capacity as an OKCFD fire investigator and in imparting information, if any, to Emcasco (or its agents) prior to denial of the insurance claim, makes Mr. Dallas a participant to specific events and occurrences particularly relevant to the lawsuit.[22] Mr. Heffron is entitled to inquire of him as to said specific events and occurrences without payment of an expert witness fee. Therefore, based on the materials presented to us it is clear the trial court exceeded its authority in requiring Mr.

Heffron to pay a $ 3,000.00 fee to Mr. Dallas, as opposed to the ordinary witness fee of $10.00. To the extent Mr. Heffron seeks to inquire of Mr. Dallas concerning the specific events and occurrences related to the investigation of this particular fire; his expert opinion of its cause and origin and the rationale behind the opinion; and what information, if any, Mr. Dallas may have told or imparted to Emcasco (or its agents) prior to the latter's denial of Mr. Heffron's insurance claim, only the ordinary witness fee is mandated. Such information is discoverable in the particular circumstances of this case via Mr. Dallas' deposition for no more than the $10.00 per day ordinary witness fee.[23]

PART V. SUMMARY.

¶ 33 We assume original jurisdiction in this matter to decide whether the trial court exceeded its authority in ruling three witnesses, assumed to be experts in their respective fields, were entitled to more compensation for the taking of their depositions under 12 O.S.Supp.2002, § 3226(B)(3)(a)(2) or § 3226(B)(3)(b), and § 3226(B)(3)(c)(1), or 12 O.S.Supp.2002, § 2004.1(C)(3)(b)(2), than the $10.00 per day ordinary witness fee provided for in 28 O.S.Supp.2002, § 81(A)(3). Though the materials presented are not sufficient for us to direct the trial judge in her ruling as to the claims adjuster, Mr. Lee and private investigator, Mr. Bulla, the submissions do

---

**22.** We assume Mr. Heffron is interested, via the depositions of all three of the witnesses involved here, in finding out what information they gave to Emcasco prior to denial of the claim for insurance benefits.

**23.** Should Mr. Heffron seek something more from Mr. Dallas which could be deemed to delve into matters unrelated to the particular facts and circumstances of the instant fire investigation, Mr. Dallas' opinion as to its cause and origin, and what information, if any, he imparted to Emcasco prior to denial of Mr. Heffron's fire insurance claim, such that the information sought could reasonably be characterized as an attempt to use or exploit for purposes of the underlying lawsuit the intellectual property interest Mr. Dallas has acquired as an expert in fire investigation, the trial court may, on proper application, reconsider the issue of a reasonable expert witness fee—or, for that matter, the need of Mr. Heffron for such information—under § 2004.1(C)(3)(b)(2).

We also note that the Deposition Subpoena Duces Tecum to Mr. Dallas, in addition to com-

manding his testimony at the deposition, commanded him to bring all photos and reports in possession of the OKCFD pertaining in any way to the involved fire or the investigation thereof. The materials presented to us in this matter contain no formal objection by Mr. Dallas to producing such materials and we are not ruling on the propriety of any objection made to the production of such documents. Further, we recognize that Mr. Dallas has argued here that Mr. Heffron is merely trying to depose him for use as an impeachment tool in the pending criminal case. The trial judge made no such finding and the record presented is insufficient for us to gauge such contention. If that is actually the case, or Mr. Dallas can somehow show his deposition is merely being taken to harass or place an undue burden on him, he may move for an appropriate protective order in the trial court. Although Mr. Dallas, as part of his response to Mr. Heffron's motion to compel his deposition based on only the ordinary witness fee, moved for a protective order in the trial court, we have been presented with no ruling thereon.

show the trial court order as to them manifests an unauthorized use of judicial force. As to the OKCFD fire investigator, Mr. Dallas, the materials also show an unauthorized use of judicial force. The trial court is prohibited from proceeding under or enforcing its orders denying Mr. Heffron's motion to compel and supplement thereto. The trial court is instructed to reconsider the issue of fees for the claims adjuster and private investigator under the standards enunciated herein under the applicable statutes, § 81(A)(3) and § 3226(B)(3)(a)(2) or § 3226(B)(3)(b), and § 3226(B)(3)(c)(1). As to Mr. Dallas, the trial court is directed to allow his deposition to be taken for the $10.00 per day ordinary witness fee to the extent Mr. Heffron seeks only to inquire of him into matters concerning specific events and occurrences involved with his investigation of this particular fire in his capacity as an OKCFD fire investigator; his expert opinion of its cause and origin and the rationale behind the opinion; and what information, if any, Mr. Dallas may have told or imparted to Emcasco (or its agents) prior to Emcasco's denial of Mr. Heffron's insurance claim.

¶34 ORIGINAL JURISDICTION IS ASSUMED; A WRIT OF PROHIBITION IS GRANTED WITH INSTRUCTIONS; AND A WRIT OF MANDAMUS IS GRANTED WITH INSTRUCTIONS. The stay of further trial court proceedings issued by Order of May 23, 2003, IS DISSOLVED.[24]

¶35 WATT, C.J., OPALA, V.C.J., HODGES, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶36 HARGRAVE, J., concurs in result.

24. On May 23, 2003, the Chief Justice granted Mr. Heffron's motion to stay further proceedings in the trial court, essentially pending this Court's resolution of the matter and until further order of this Court.